## Darin Unemployment Compensation Case.

Argued November 9, 1959. Before JONES, C. J., BELL, JONES and BOK, JJ.

*James Craig Kuhn, Jr.,* with him *Arnold D. Wilner,* and *Wilner, Wilner and Kuhn,* for claimant, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Thomas M. Cooley, II,* with him *Marjorie Hanson Matson, Martin Lubow,* and *H. David Rothman,* for American Civil Liberties Union, amicus curiae.

OPINION BY MR. JUSTICE BOK, January 18, 1960:

Appellant was employed by Westinghouse Electric Corporation as a machine operator since 1929. In December, 1954, she was discharged. At the time of her discharge she was ill in a hospital. Presumably by reason of having been named as a member of the Communist Party by persons available to the Senate Permanent Subcommittee on Investigations, she was subpoenaed to appear before it. Being then ill she presented a doctor's certificate and was excused. She was not summoned again. Hence she never appeared before the Committee and had no opportunity to deal with the accusations made there against her.

Westinghouse also failed to interview or hear her and discharged her by telegram sent to her in the hospital without giving a reason. Later it reported to the Unemployment Compensation authorities that she had been "released as an undesirable employee."

Appellant later applied for unemployment compensation benefits and appeared for the first time anywhere before the Referee, where she took the protection of the Fifth Amendment to the United States Constitution and refused to answer the question: "Were you ever a member of the Communist Party?" She was not asked whether she was a current member. The Referee then asked the Board's interviewer for a statement, which was as follows: "Miss Darin was an undesirable employee due to left wing activities and associations which have been widely publicized, bringing

discredit upon the Westinghouse, its stockholders and thousands of loyal employees. She has been accused in sworn testimony before appropriate government authorities of communist party activities. Management believes her continued employment in this defense industry clearly not within the best interests of Westinghouse and its employees, the general public, and national security. Evelyn Darin has been identified as a member of the Communist Party by Peter T. Leydon, a Westinghouse employee testifying under subpoena; Francis Nestler, self-identified former Communist; and, by Mary S. Beynon, who joined the Communist Party in 1946, with the advance notice of the Federal Bureau of Investigation, as an undercover agent. In view of this record of undenied Communist connections, and the discredit it has brought upon Westinghouse, as well as the element of national security involved, this employe is released as of December 29, 1954, her last day of work."

The Referee found that appellant's invoking the Fifth Amendment was "wilful misconduct in connection with the work", and denied compensation. The Board of Review and the Superior Court affirmed, and we granted allocatur.

We have no issue before us save appellant's right to unemployment compensation.

It should be noted that the foregoing statement of the interviewer, which seems to have emanated from the employer, is the only thing appearing in the record to indicate the nature of the charge of communism brought against the appellant. Its final sentence: "In view of this record of undenied Communist connections . . . this employee is released as of December 29, 1954", is incorrect, since the record shows no hearing or opportunity to deny the charges given the appellant before her release by her employer. Not only was this statement read to the Referee after and not before she

had refused to answer the general question of communist membership, but even after its reading she was not asked to comment upon it. In so far as the record shows, she was never told the names of her accusers until this statement was read, or, except for the subpoena to appear before the Senate Committee, was she told what the charges were. The Board of Review repeated this serious inaccuracy when it said: "The employer justifiably discharged the claimant when she failed to avail herself of the opportunity to clear herself as a potential security risk." There was no such opportunity. Finally, the Superior Court compounded the error by referring to the interviewer's statement and continuing: "The referee *then* asked the claimant whether she was ever a member of the Communist Party." (Our emphasis). The statement came second, not first, and the record clearly shows that she was not asked about it.

The Superior Court cites only *Ault Unemployment Compensation Case*, 188 Pa. Superior Ct. 260 (1958), 146 A. 2d 729, to sustain its position. The cases are obviously different in their facts, since Ault appeared before the Senate Subcommittee and was given a hearing by his employer before it discharged him. In the instant case appellant had no such appearance or hearing and had no chance whatever to deal with her accusers until after she had been discharged.

This is not a case of lack of due process but lack of any process whatever.

It should suffice to quote Mr. Justice CLARK in *Slochower v. Board of Education*, 350 U. S. 551 (1956), 76 S. Ct. 637: "At the outset we must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment. The right of an accused person to refuse to testify, which had been in England merely a rule of evidence, was so important to our forefathers that they

raised it to the dignity of a constitutional enactment, and it has been recognized as 'one of the most valuable prerogatives of the citizen'. Brown v. Walker, 161 U. S. 591, 610 [16 S. Ct. 644, 652, 40 L. Ed. 819]. We have reaffirmed our faith in this principle recently in Quinn v. United States, 349 U. S. 155 [75 S. Ct. 668, 99 L. Ed. 964]. In Ullmann v. United States, 350 U. S. 422 [76 S. Ct. 497], we scored the assumption that those who claim this privilege are either criminals or perjurers. The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. As we pointed out in Ullmann, a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances. See Griswold, the Fifth Amendment Today (1955)."

Appellee suggests that *Slochower* is not controlling because of the later cases of *Lerner v. Casey*, 357 U. S. 468 (1958), 78 S. Ct. 1311, and *Beilan v. Board of Philadelphia Education*, 357 U. S. 399 (1958), 78 S. Ct. 1317.

We reject the suggestion because there was some process in both cases prior to discharge. In the instant case the duty of frankness discussed in the *Lerner* and *Beilan* opinions had no chance to coalesce, and we are unwilling to assume that appellant's reasons for invoking the Amendment *ex post facto* before the Referee would necessarily have been the same if due process had been accorded her earlier. Even if the duty of frankness applied to her, she had no chance to be frank or otherwise until after she was discharged: hence such "wilful misconduct" under Section 402(e) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 P.S. §802, could not possibly have been "connected with [her] work" (43 P.S.

§801f). Accordingly she is entitled to the presumption of innocence given her by *Slochower*.

We might add that nothing that is done before the Referee has any bearing on the right of a discharged employe to unemployment compensation. Its grant or refusal must be determined on the point of his right to it at the time of his separation from his employment.

The judgment of the Superior Court is reversed.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE BELL:

I would affirm on the opinion of Judge WOODSIDE, speaking for a unanimous Superior Court.