Caloric Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 16, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Alfred C. Phillips,* with him *C. Grainger Bowman, McNees, Wallace & Nurick,* for petitioner.

*Gerald I. Roth,* for claimant, Richard L. Emerich.

OPINION BY JUDGE CRAIG, November 30, 1982:

Employer Caloric Corporation appeals an order of the Unemployment Compensation Board of Review, which held that claimant Richard L. Emerich, a former Caloric employee, was not disqualified from receiving benefits under Section 402(e) of the Unem-

ployment Compensation Law,[1] which precludes payment of benefits to individuals terminated from employment for willful misconduct.

At the hearing before a referee, the employer's only witness, its director of personnel, testified that the claimant was fired for selling company products for personal gain.[2] To support this allegation, the employer offered in evidence four exhibits, which included copies of checks payable to the claimant and correspondence between the claimant and the California company to whom he allegedly sold the products.[3] The claimant's counsel objected to the admission of these exhibits on the ground that they were hearsay, but the referee permitted their introduction into the record, with the understanding that claimant's counsel had entered the proper objection.

The employer's witness then testified that the employer had fired the claimant after discovering the documents, although he acknowledged that he never had discussed these allegations with the claimant.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] There is no dispute that the sale of the employer's property by an employee for his personal gain constitutes willful misconduct. *See Kostik v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 32, 315 A.2d 308 (1974).

[3] The employer obtained these documents from a former employee of the company to whom the claimant allegedly sold the parts. They included a letter to "Bob" from "Dick" stating that the former would be billed half of the credits due "Cal-Tex San Diego" and inquiring as to whether he would accept fourteen invoices for $1000 per month for the next fourteen months (Exhibit A); an invoice under the letterhead "Emerich Enterprises, Center Valley, Pennsylvania" with a note to "Bob" thereon ("Exhibit B"); three pages of invoices and a fourth page with copies of three checks ("Exhibit C"); and an invoice from Parts Distributors Corp., Willow Grove, Pennsylvania, sent to the California firm, and copies of two checks payable to the claimant ("Exhibit D").

Subsequently, the employer's counsel requested that the claimant be called as a witness, but the claimant's attorney advised the claimant to take the Fifth Amendment privilege against self-incrimination because of a pending FBI investigation into possible criminal activity by the claimant. After the claimant's refusal to testify, no further evidence was presented.

The board held that the employer did not meet its burden of establishing that the claimant had been discharged because of willful misconduct. *See Boyer v. Unemployment Compensation Board of Review*, 51 Pa. Commonwealth Ct. 191, 195, 415 A.2d 425, 428 (1980). The board considered the four exhibits to be hearsay and therefore found that there was no competent evidence in the record to support a finding of willful misconduct.

The employer challenges the decision, contending that the four exhibits, taken together with the fact of the claimant's exercise of his privilege against self-incrimination, constitute evidence that would support a finding of willful misconduct.

The claimant responds, saying that the exercise of the privilege does not constitute evidence, and that because the four exhibits are uncorroborated hearsay evidence to which an objection was properly made, the board's holding is correct under our decision in *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976).[4]

---

[4] The employer argues that the rule expressed in *Walker* that hearsay evidence, when objected to in an administrative hearing, cannot be the basis for a finding by the board, was overruled in *Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631 (1981) (ROBERTS, J. concurring, joined by LARSEN, J. and FLAHERTY, J.). However, our Supreme Court recently applied the *Walker* rule in an unemployment case involving hearsay evidence, noting that "the opinion of Justice KAUFFMAN in *Ceja* was

In reviewing this appeal, we must consider whether (1) the four exhibits that were introduced into evidence by the employer constitute hearsay, and (2) whether the exercise by the claimant at the hearing of his Fifth Amendment privilege against self-incrimination can be treated as evidence sufficient to explain, as well as corroborate, those exhibits.

### The Exhibits

Hearsay evidence, of course, is an out-of-court statement offered for the purpose of proving the truth of the matter asserted therein. *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968), *Baird v. Unemployment Compensation Board of Review*, 30 Pa. Commonwealth Ct. 118, 372 A.2d 1254 (1977). Where evidence is not offered to prove the truth of the matter therein contained, but only offered to show that something was communicated between the sender and the receiver of the communication, the hearsay rule does not exclude the evidence. *Whitfield v. Reading Co.*, 380 Pa. 566, 112 A.2d 113 (1955).

The claimant testified, before exercising his privilege, that the signature on one of the exhibits was his. Lacking a clear offer of proof in the record, we conclude that, at most, the one exhibit authenticated by the claimant's signature admission is admissible to prove the existence of communication.

Nevertheless, although at least one of the exhibits could be viewed with suspicion, they tend to prove only that the claimant corresponded with the California firm. These exhibits, standing alone, simply do not prove the allegations of wrongdoing.

---

not joined by any other members of this Court; thus, that opinion is of no precedential value whatsoever—it merely announced the Court's result." *LeGare v. Unemployment Compensation Board of Review*, 498 Pa. 72, 78, n. 3, 444 A.2d 1151, 1154 (1982).

For the latter purpose, they would be inadmissible as uncorroborated hearsay, unless we should conclude that corroboration was supplied by the claimant's refusal to testify, to which we now turn.

## The Claimant's Exercise of His Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

Here, the claimant feared that his testimony could be used against him in a future criminal trial as a result of a pending FBI investigation, and thus he had a right to exercise his privilege.

However, as distinguished from the situation in criminal cases,[5] the Fifth Amendment "does not forbid adverse inferences against parties to civil actions where they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.' " *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), citing 8 J. Wigmore, Evidence 439 (McNaughton Rev. 1961).[6] There-

---

[5] It is constitutional error under the Fifth Amendment to instruct a jury in a criminal case that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case. *Griffin v. California*, 380 U.S. 609 (1965).

[6] Mr. Justice BRENNAN's dissent in *Baxter*, 425 U.S. at 333-34, notes that:

The Court also draws support from the "prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify

fore, the board properly could draw some inference from claimant's exercise of the Fifth Amendment.

The pivotal question in our inquiry, however, is whether the inference which may result from claimant's exercise of his privilege—either alone or in conjunction with the exhibits—can constitute "substantial evidence"[7] to satisfy our longstanding requirement that the employer has the burden of establishing that the discharge was for willful misconduct. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973).[8]

In our recent decision, *Harring v. Unemployment Compensation Board of Review,* 70 Pa. Commonwealth Ct. 173, A.2d (1982), we held that, although a trier of fact may draw an adverse inference from a party's silence, such inference cannot be used as a substitute for the employer's failure to introduce sub-

---

in response to probative evidence offered against them." Ante, (citation omitted). That rule may prevail, but it did not have the approval of this Court until today.

[7] *See Hollister v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 641, 396 A.2d 89 (1979).

[8] The employer contends that the claimant, by seeking unemployment benefits, is in a position analogous to a plaintiff in a civil suit. The courts have consistently penalized plaintiffs and counterclaiming defendants in private civil litigations who refuse to answer questions in discovery or at trial. *See, e.g., Levine v. Bornstein,* 13 Misc. 2d 161, 165, 174 N.Y.S. 2d 574, 578 (Sup. Ct. 1958), the oft-cited case which summarized the reasons for such results as follows:

The plaintiff . . . obviously had the right to claim the privilege, but he cannot eat his cake and have it too. The defendant also has certain rights, one of which is to defend this lawsuit and to develop an affirmative defense which may well destroy the plaintiff's right to maintain his action.

However, although the claimant is seeking unemployment benefits, he is unlike a plaintiff, because he has no burden of proof. *See* Note, "Use of the Privilege Against Self-Incrimination in Civil Litigation," 52 Va. L. Rev. 322 (1966).

stantial evidence to meet its burden of proving that an employee's discharge resulted from willful misconduct. We emphasized that the inference merely goes to the credibility of the evidence already introduced. *See Schwegel v. Goldberg,* 209 Pa. Superior Ct. 280, 228 A.2d 405 (1967).

The United States Supreme Court, in *Baxter,*[9] noted the limited application of the adverse inference, saying:

> "It is thus indisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board. ... Here, [the prisoner] remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege. [It] is merely a realistic reflection of the evidentiary significance of the choice to remain silent."

*Id.* at 317-318.[10]

In emphasizing the existence of other evidence, the Court distinguished a number of its decisions, including *Garrity v. New Jersey,* 385 U.S. 493 (1967) and *Lefkowitz,* where it held that the refusal to sub-

---

[9] *Baxter* involved a disciplinary hearing of a prison inmate in Rhode Island. These disciplinary decisions must be based on substantial evidence. Also, the Court emphasized that "(n)o criminal procedures are or were pending against [the prisoner]." *Baxter,* 425 U.S. at 317.

[10] The Court noted that the disciplinary board's decision was based on the prisoner's decision at the hearing not to speak and supplementary reports made by the prison officials. *Id.* at 320, n. 4.

mit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to other evidence, generally could not result in loss of employment or opportunity to contract with the state.[11]

The refusal to allow the exercise of the privilege to satisfy the employer's burden of proving willful misconduct, absent any other evidence, characterized the Pennsylvania Supreme Court's decisions in *Darin Unemployment Compensation Case,* 398 Pa. 259, 157

---

[11] In *Garrity,* policemen were summoned to testify in the course of an investigation of police corruption, and they were told that they could claim the privilege against self-incrimination, but would be discharged if they did. The Court held that imposition of the choice between self-incrimination and job forfeiture denied the constitutionally required free choice to admit, deny or refuse to answer. Subsequently, in *Spevack v. Klein,* 385 U.S. 511 (1967), an attorney was disbarred for exercising the privilege by refusing to honor a subpoena calling for production of certain financial records. The Court held that the state, by inferring professional misconduct, and penalizing that misconduct, solely on the basis of an invocation of the privilege, violated the attorney's Fifth Amendment rights. However, the Court modified this rule in *Gardner v. Broderick,* 392 U.S. 273 (1968), holding that a police officer, appearing before a grand jury investigation concerning alleged bribery and corruption could be dismissed for refusing to sign a "waiver of immunity." The Court, emphasized the unique role of a police officer, noting that unlike a lawyer, a police officer is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer. Furthermore, the Court held, in *Sanitation Men v. Sanitation Commissioners,* 392 U.S. 280 (1968), that in maintaining the narrow police exception, sanitation employees being investigated for alleged improprieties could not be given the choice between their constitutional right to invoke their privilege and the loss of their jobs. In *Lefkowitz v. Turley,* 414 U.S. 70 (1973), the Court ruled that a state statute, which provided that a refusal of architects to waive the privilege against self-incrimination at a grand jury investigation would result in cancellation of existing state contracts and ineligibility for future contracts for five years, infringed on the Fifth Amendment rights of the architects.

A.2d 407 (1960), and *Ault v. Unemployment Compensation Board of Review*, 398 Pa. 250, 157 A.2d 375 (1960).[12] We understand the judicial concern to be that, although the inference may suggest an admission of guilt or wrongdoing as to some matter, *that matter could be unrelated to that which the employer bears the burden of proving.*[13] See Ratner, Consequences of Exercising the Privilege Against Self-Incrimination, 24 U. Chi. L. Rev. 472, 492-93 (1957).

In *Ault,* where an employee was discharged after exercising his privilege before a United States Senate subcommittee, our Supreme Court said:

An employer may discharge an employee for any reason or no reason, absent contractual

---

[12] In *Darin* and *Ault,* our Supreme Court relied on *Slochower v. Board of Education,* 350 U.S. 551 (1956) to support its holdings that one who exercises his privilege either before the Unemployment Compensation Board of Review or before an investigatory subcommittee of the United States Senate is "entitled to the presumption of innocence [provided] by Slochower." *Darin,* 398 Pa. at 265, 157 A.2d at 409. However, the United States Supreme Court's recent decision in *Baxter,* which held that an adverse inference may be drawn from a party's use of the privilege at a civil hearing, limits the rule in *Slochower* that one who exercises the privilege is entitled to a presumption of innocence. Accordingly, we construe our Supreme Court's decisions in *Ault* and *Darin* to be modified to the extent that *Baxter* limits the application of *Slochower.*

[13] In *Darin,* an employee, subpoenaed to testify before the United States Senate Permanent Subcommittee on Investigations, failed to appear, having presented a doctor's certificate indicating that she was ill. As a result of her failure to appear, her employer discharged her, stating that she was "an undesirable employee." The employee took the protection of the Fifth Amendment at her unemployment compensation hearing, and refused to answer the question: "Were you ever a member of the Communist Party?" The Supreme Court reversed the board's conclusion that the employee's use of the Fifth Amendment indicated "willful misconduct in connection with the work," emphasizing that the fact that the employee may have been a communist did not indicate whether she was so presently as to affect her present job performance.

restrictions. But an unemployed person may not be denied benefits for any reason or no reason: The Act allows denial only for wilful misconduct connected with his work. . . . Since a man may be discharged for any reason or no reason his ensuing right to unemployment benefits is dependent on whether the discharge was for wilful misconduct. The Compensation authorities must show that it was. The Compensation Act requires that otherwise he should get the benefits. Hence he has the right to await charges and meet them as he thinks best.

*Id.* at 257, 157 A.2d at 379.[14]

In so holding, the court emphasized that:

Difficulty of proof has never been allowed as an excuse for dispensing with it.

*Id.* at 255, 157 A.2d at 378.

In summary, although we recognize that the use of the self-incrimination privilege at an unemployment compensation hearing may support an inference, that inference goes only to the credibility of that evidence introduced by the party who has the burden of proof. Here, the only evidence introduced by the employer, the four exhibits, merely indicated that the claimant had communicated with the California firm. Alone, those letters did nothing to establish willful misconduct. *See McAndrew v. Unemployment Compensation Board of Review,* 178 Pa. Superior Ct. 98, 113 A.2d 157 (1955). Given the lack of effective evidence, *see Lipshutz v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 257, 303 A.2d 231 (1973), we agree with the board that the employer has

---

14 *Accord, Grace v. Unemployment Compensation Board of Review,* 50 Pa. Commonwealth Ct. 412, 412 A.2d 1128 (1980) (distinction between the employer's right to terminate employment and the state's right to deny benefits).

failed to meet its burden of proving that the discharge of claimant was for willful misconduct.

ORDER

Now, November 30, 1982, the decision of the Unemployment Compensation Board of Review, dated July 13, 1981, at No. B-197152, is hereby affirmed.