Thomas J. Evans, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Gilbert J. Falvo, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Ralph Mazzocchi Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Manuel G. Ganopules, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

298

Argued October 19, 1984, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*James W. Carroll, Jr.,* with him, *H. Yale Gutnick,* for petitioners.

*Charles Hasson,* Acting Deputy Chief Counsel, for respondent.

*Charles D. Shields, Jr.,* with him, *Alan C. Kohler,* for respondent/intervenor, Department of Auditor General.

OPINION BY JUDGE CRAIG, November 30, 1984:

In these consolidated cases, Thomas J. Evans, Gilbert J. Falvo, Ralph Mazzocchi and Manuel G. Ganopules, former employees of the Pennsylvania Department of Auditor General, appeal decisions of the Unemployment Compensation Board of Review, which affirmed a referee's denial of benefits to each claimant pursuant to section 3 of the Unemployment Compensation Law[1]—that persons unemployed through fault of their own are ineligible for benefits. We must determine (1) whether the claimants' conduct amounted to fault under section 3, (2) whether the claimants' actions were too remote from their discharge to support a finding of fault, (3) whether the record contains substantial competent evidence to support the referee's findings, and (4) whether there was a waiver by the employer, effective as to section 3.

The Department of Auditor General terminated the claimants[2] after a grand jury presentment had named

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752.

[2] Claimant Evans had been employed since December 3, 1979; on September 23, 1981, the day of his suspension, he was working as a Field Auditor III.

Claimant Falvo had begun his employment on August 11, 1980, and he was working as a Field Investigator when he was suspended on September 23, 1981.

Claimant Mazzocchi had worked for the Auditor General's Department since May 7, 1979, and was suspended September 24, 1981.

them as persons who had paid money to obtain employment.[3] After a hearing, the Office of Employment Security determined that the claimants were ineligible for benefits. The referee, after de novo hearings, concluded that, although the department had waived the right to advance willful misconduct as a ground for denial of benefits, each claimant was ineligible under section 3 because they could not, according to the referee, "be considered as being unemployed through no fault of [their] own." On appeal the board adopted the referee's findings and conclusions in each case.

## 1. Fault Under Section Three

Section 3, which announces the public policy to which the Unemployment Compensation Law is addressed, provides in relevant part:

> The Legislature, therefore, declares that in its considered judgment the public good and the general welfare . . . require . . . the compulsory setting aside of employment reserves to be used for the benefit of persons unemployed through no fault of their own.

An extensive line of cases in this court, some affirmed by the Pennsylvania Supreme Court, has established that section 3 is a substantive provision of the Unemployment Compensation Law and that, as such, it provides an independent basis for the denial of benefits when an employee is unemployed through some "fault" of his own.[4]

---

Claimant Ganopules had been employed since July 1, 1979; when he was suspended on September 23, 1981, he was working as a Field Auditor III.

[3] The grand jury's indictment, resulting from its job-selling investigation, did not indict any of these claimants.

[4] See *Smith v. Unemployment Compensation Board of Review*, 487 Pa. 448, 409 A.2d 854 (1980) (affirming *Huff v. Unemployment*

In section 3 cases the employer bears the burden of establishing conduct on the part of the employee which, as a matter of law, constitutes fault within the meaning of the section. *D'Iorio v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 443, 400 A.2d 1347 (1979); the employer must produce evidence demonstrating fault "which would be incompatible with his work responsibilities." *Unemployment Compensation Board of Review v. Derk*, 24 Pa. Commonwealth Ct. 54, 353 A.2d 915 (1976). As in all unemployment appeals where the burdened party prevails below, our review is limited to questions of law and whether substantial evidence supports the findings of fact. *Dickey v. Unemployment Compensation Board of Review*, 78 Pa. Commonwealth Ct. 58, 466 A.2d 1106 (1983).

Before the referee, the department established, through the claimants' own admissions,[5] that they had indeed made payments in conjunction with their job applications. The department showed that each claimant had failed to list that payment on his employment application, which required the applicant to declare under oath that he had made "no misrepresentations

Compensation Board of Review, 40 Pa. Commonwealth Ct. 11, 396 A.2d 94 (1979); *Katz v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 1, 396 A.2d 480 (1979); *Mooney v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 404, 395 A.2d 675 (1978); *Collins v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 389, 395 A.2d 667 (1978); *Gulick v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 73, 388 A.2d 1154 (1978)); *D'Iorio v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 443, 400 A.2d 1347 (1979); *Unemployment Compensation Board of Review v. Derk*, 24 Pa. Commonwealth Ct. 54, 353 A.2d 915 (1976); *Unemployment Compensation Board of Review v. Ostrander*, 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975).

[5] The admissions were in the transcripts of testimony which the O.E.S. hearing officers had taken.

or falsifications, omissions, or concealment of material fact." Through the introduction of the grand jury presentment, the department demonstrated that each of the claimants had been named in the presentment.

Based on that evidence, the referee found in each case that the claimant had delivered money to another person in conjunction with his employment application. By a finding which appears in the discussion section of the referee's decision,[6] he also found that each claimant was, or should have been, aware of the impropriety of such a payment.

The referee therefore determined, albeit implicitly, that the claimants' use of improper methods to obtain their jobs was incompatible with the responsibilities of their positions and concluded that each claimant had "placed himself in the present chain of circumstances" and therefore was not unemployed "through no fault of his own."

The referee did not find persuasive the claimants' contention that they were innocent victims of a corrupt political system. Obviously, any corrupt pattern depends upon participants who are willing, not only to engage in improper behavior, but to remain silent about the situation.

Similarly, the referee rejected the claimants' allegations that they believed that they had made legitimate political contributions. The claimants' employment histories, together with their failure to disclose the payments on their employment applications—an

---

[6] *See Schmidt v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 55, 453 A.2d 1088 (1983), where this court accepted a finding from the board's discussion but noted disapproval of the board's failure to enumerate all findings in the proper "findings of fact" section.

omission of material fact—clearly support the referee's finding.[7]

## 2. Remoteness of Claimants' Conduct

Claimants cite a number of unemployment compensation cases[8] in support of their contention that their conduct was too remote temporally to support a finding of fault; however, each of those cases involved charges of willful misconduct in situations where the employer had been aware of the claimants' conduct from the outset, and, by inaction, had condoned the behavior. Those cases do not control here, where the referee denied benefits under section 3, and there is no evidence that the employer was aware of the claimant's misdeed until the grand jury presentment.[9]

The present situation is analogous to those willful misconduct cases where the employer is not aware of the claimants' actions until some period of time elapses, but acts without delay once the discovery is made. *Bivins v. Unemployment Compensation Board of Review,* 79 Pa. Commonwealth Ct. 643, 470 A.2d 662

---

[7] We also reject claimants' contention that, because the referee found the money had been a "payment or contribution", he implicitly found they were legitimate political contributions. The referee's decision is unequivocal in its determination that the delivery of money was improper.

[8] *Panaro v. Unemployment Compensation Board of Review,* 51 Pa. Commonwealth Ct. 19, 413 A.2d 772 (1980) ; *Tundel v. Unemployment Compensation Board of Review,* 44 Pa. Commonwealth Ct. 312, 404 A.2d 434 (1979) ; *Unemployment Compensation Board of Review v. Dravage,* 23 Pa. Commonwealth Ct. 636, 353 A.2d 88 (1976).

[9] We cannot agree with claimants' argument that the department was aware of, and even encouraged, their conduct from the outset. Although, if claimants' accounts are accurate, at least one employee of the Auditor General was aware of the job-selling practice, the record contains no evidence that any of these claimants' supervisors had knowledge of the payments the claimants had made until the grand jury presentment.

(1984); *Lower Gwynedd Township v. Unemployment Compensation Board of Review,* 44 Pa. Commonwealth Ct. 646, 404 A.2d 770 (1979). Those cases demonstrate the relevant time span: from the employer's discovery of the employee's misdeeds until its action to discharge the employee. Here the departmnt suspended the employees shortly after learning of their actions, clearly a swift reaction that evidences no approval of the conduct.

### 3. Sufficiency of the Evidence

The claimants contend that the referee erred in admitting evidence that was allegedly improper hearsay.

The first of those arguments concerns the referee's decision permitting Ms. Mooney and Mr. Garrah, both of whom were OES hearing officers in these cases, to testify. The attack is two-pronged: that the testimony concerning what the claimants had said was hearsay and that 34 Pa. Code §101.62(a) prohibited the witnesses from testifying.

With respect to the hearsay contention, we need only note the long-established principle that words of a party constitute an admission and therefore may always be used against him. *Wright v. Unemployment Compensation Board of Review,* 77 Pa. Commonwealth Ct. 278, 465 A.2d 1075 (1983). *Unemployment Compensation Board of Review v. Houp,* 20 Pa. Commonwealth Ct. 111, 340 A.2d 588 (1975).

Section 101.62(a) of 34 Pa. Code, "Disqualification to participate in hearing or decision", provides:

> No referee, member of the Board, or employee of the Department shall participate in the hearing or determination of any case in which he himself is an interested party. The

Board will designate an alternate to serve in the absence or disqualification of any referee.

Although no cases have interpreted the meaning of that regulation, we cannot accept the claimants' proposal that the hearing officers were "interested parties" under the regulation because of their interest in having the referee agree with their positions. The regulation prevents participation, not in the present situation but in those cases where a departmental representative has an interest, arising outside his employment, in the outcome of the case.

Furthermore, the referee specifically limited the purpose of Garrah's testimony to establishing a foundation for the introduction of the tapes of the claimants' interviews, and although the record is not absolutely clear on the point, presumably the referee considered Mooney's testimony with the same restriction.

Secondly, the claimants contend that the admission of the grand jury presentment was error because the decision was itself hearsay. The referee allowed the document, not to prove the truth of its contents—that the claimants had purchased their jobs—but to show that it had named the claimants, for the purpose of showing the negative impact on their effectiveness as employees. The law is well established that a hearsay objection is only appropriate where a party offers a statement to prove the truth of its contents. *Caloric Corporation v. Unemployment Compensation Board of Review,* 70 Pa. Commonwealth Ct. 182, 452 A.2d 907 (1982); therefore, we must reject claimants' hearsay objection as inapposite.

Finally, claimants assert that the referee erred in allowing the introduction of transcripts of their interviews with the OES hearing officers. We must reject their first point, that the transcripts were inadmissible

as hearsay because, as we noted above, an admission by a party constitutes an exception to the rule excluding hearsay.

Their second contention, that the referee's reception of the tapes compromised the independent character of the proceeding, misapprehends the nature of that proceeding. The parties submitted to the referee, as trier of fact, relevant, admissible evidence; the referee then considered that evidence unrestricted by the earlier decisions of the OES. Evidence that is relevant and otherwise admissible does not become incompetent merely because it was first presented to an OES hearing officer.

The claimants also contend that because the hearing officers had some discussions with the claimants off the record, and those discussions were therefore not in the transcript, the transcripts were inadmissible. Obviously, the transcripts are only evidence of what was taken on the record; however, the claimants have offered no authority to support their novel position that off-the-record exchanges render the transcript of a proceeding inadmissible.

### 4. Waiver as to the Claimants' Behavior

The referee found, based upon the testimony of an Attorney General's investigator, that a highly-placed official in the Auditor General's office had informed the investigator that any employees who cooperated with the Attorney General's investigation into alleged job-selling incidents would suffer no retaliation and that their jobs would be secure. That assurance, according to the official, came directly from the Auditor General himself. The investigator relayed that assurance to these claimants, among others, and they then agreed to cooperate and admitted they had indeed made payments in connection with their job applica-

tions. Despite the assurance to the contrary, the department first suspended and then dismissed each of the claimants for involvement in job-purchasing.

In his discussion, the referee interpreted the departmental assurance as a waiver of the right to complain of "what the claimant did in obtaining his job" and what some claimants also did "in obtaining [a] salary increase." However, the referee applied that waiver to bar only the employer's right to advance section 402(e) of the law, 43 P.S. §802(e), the willful misconduct disqualification. He refused to extend the waiver to the matter of reliance on section 3 as an independent basis for claimants' disqualification.

We have held that an employer may, by its conduct, waive the right to maintain an otherwise valid position that an employee's actions constituted willful misconduct.[10] Willful misconduct is, by its nature, activity which is inimical to the employer's interests. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). Clearly the definition of its own interest is within the province of every employer; therefore, logic dictates that an employer may, by inaction or conscious decision, surrender the right to complain that an employee's conduct had compromised one of those interests.

In contrast to the willful misconduct provision, section 3 represents the legislature's announcement of public policy. That policy, quite unequivocally, is that unemployment compensation benefits are intended for those who are "unemployed through no fault of their own."

Because section 3 protects the interests of the general public, as opposed to that of a single employer,

---

[10] *See,* e.g., *Unemployment Compensation Board of Review v. Keller,* 23 Pa. Commonwealth Ct. 603, 353 A.2d 485 (1976).

a claimant's employer could not, by decision or failure to act, waive the statutory safeguard of the public interest. Thus, we agree with the referee's implicit conclusion that the employer's assurances in this case did not operate as a waiver of claimants' disqualification under Section 3 of the law.

Accordingly, we affirm.

ORDER IN 2625 C.D. 1983

Now, November 30, 1984, the order of the Unemployment Compensation Board of Review, No. B-221657, dated August 26, 1983, is affirmed.

ORDER IN 2626 C.D. 1983

Now, November 30, 1984, the order of the Unemployment Compensation Board of Review, No. B-221659, dated August 26, 1983, is affirmed.

ORDER IN 2627 C.D. 1983

Now, November 30, 1984, the order of the Unemployment Compensation Board of Review, No. B-221656, dated August 26, 1983, is affirmed.

ORDER IN 2628 C.D. 1983

Now, November 30, 1984, the order of the Unemployment Compensation Board of Review, No. B-221660, dated August 26, 1983, is affirmed.

