Terry L. HARMON

v.

**MIFFLIN COUNTY SCHOOL
DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1996.

Decided Oct. 25, 1996.

Norman L. Levin, Lewistown, for Appellant.

Lester H. Zimmerman, Jr., Lewistown, for Appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

The Mifflin County School District (District) appeals the February 27, 1995, order of the Court of Common Pleas of Mifflin County (common pleas court) which reversed the District's dismissal of Terry L. Harmon (Harmon) and directed the District to reinstate Harmon to his position as a custodian with full back pay.

By letter dated February 27, 1991, Harmon received notice that he was suspended without pay for improper conduct in violation of Section 514 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–514. Harmon was specifically charged with providing money and conspiring with Richard Wagner (Wagner), another District employee, to purchase marijuana between June 1, 1990, and September 24, 1990. Although he was never criminally charged with possession of marijuana, Harmon was terminated at a regular public meeting of the District's Board of School Directors (Board) on March 18, 1991. Harmon challenged his termination and hearings were conducted on August 15, 1991, and on February 27, 1992.

In support of the charges, the District presented the testimony of Dr. Robert G. Bohn (Bohn), the District's Superintendent. Bohn testified that in February of 1991 he learned of a criminal complaint that charged Wagner with possession with intent to deliver marijuana. Bohn stated that Wagner and another District employee named in the criminal complaint, Danny Osborne (Osborne), identified Harmon as being involved in the marijuana conspiracy.[1]

---

1. Harmon's counsel objected on the grounds that Dr. Bohn's testimony was hearsay. The Board overruled the objection because it was not offered to prove the truth of Harmon's involvement

Bohn testified further that he met with Harmon on three separate occasions to discuss these allegations and that Harmon failed to confirm or deny his involvement in any conspiracy.[2] Bohn concluded that Harmon deserved to be dismissed because he did not deny involvement in the conspiracy at the three separate meetings.[3] Bohn admitted that he told Harmon that he did not have to answer any questions about his involvement in the conspiracy[4] and that Harmon was not warned that his failure to answer questions would be considered an admission.[5]

The District also presented the testimony of Wagner and Osborne. Wagner identified the criminal complaint and warrant affidavit issued against him, then asserted his Fifth Amendment privilege against self-incrimination and refused to answer any further questions. Osborne testified that Wagner told him that Harmon was involved in the marijuana conspiracy. Osborne also stated that he told Bohn and other District officials that Harmon was involved in the conspiracy.

Harmon testified at the February 27, 1992, Board hearing. He restricted his testimony to questions concerning his age and nature of employment. Harmon, like Wagner, asserted his Fifth Amendment privilege and refused to answer any questions concerning his involvement in any conspiracy.

In a decision dated May 18, 1992, the Board made the following relevant findings of fact:

15. A criminal complaint dated February 19, 1991 was issued against Richard L. Wagner, a school district employee, charging him of engaging with others "in conduct constituting the crimes of possession with the intent to deliver and delivery of

---

2. Bohn testified as follows:

I felt I had no choice but to call Mr. Harmon to my office and confront him with what I had heard. I did that on February 25th, I believe that was a Monday, 1991, and Mr. Harmon came into my office.

....

I told [Harmon] that this was not a disciplinary hearing, but I felt that I needed to tell him what I had heard because of its implications and potential discipline. He did not respond in any way. That is he did not answer yes or no to any of my questions. I told him of two employees who had given us his name as being involved and he preferred not to answer any of the questions. I told him that was his right, but I had no choice but to investigate further and that I would be back to Mr. Harmon as soon as possible. He then left the meeting. We held a second meeting.... That was on February 26, 1991, the very next day.

....

Mr. Harmon would not confirm or deny any or respond to any of the questions that I put to him, in my experience a person who is wrongly accused will deny it.

....

Mr. Harmon was present at a third hearing. This one through the grievance process which I attended and so there were three occasions, three meetings that I was in his presence where he had ample opportunity to deny.... N.T. 8/15/91 at 20–22; R.R. at 24a–26a.

in the marijuana conspiracy, but "to explain to the Board how [Bohn] came to talk to Mr. Harmon and how he was directed there." Notes of Testimony, August 15, 1991, (N.T. 8/15/91) at 15; Reproduced Record (R.R.) at 19a.

3. Harmon's counsel objected to this testimony, but was overruled.

4. The District's counsel, Norman L. Levin, to Bohn:

Q: Just a question, Dr. Bohn. Why would you tell Mr. Harmon he didn't have to answer any of your questions?
A: I told him that I was confronting him with something that came to me and I felt obligated to let him hear what I had heard because it bothered me and I just felt it was my duty to inform him. Now, whether he responded or not, that's his business. I don't think I told him. I think I testified that I told him he didn't have to respond, but I wanted him to hear it and then I asked him the questions that day, I asked him the next day and we got no response.
N.T. 8/15/91 at 27; R.R. at 31a.

5. Harmon's counsel, Lester H. Zimmerman, to Bohn:

Q: Now, I believe at your first meeting with Mr. Harmon concerning the matters that you have testified about, did you not tell him that he did not have to answer any of your questions?
A: That's correct.
Q: And did you tell him what would happen if he didn't answer those questions?
....
A: No.
Q: Did you tell him that you would assume that if he didn't say that—didn't answer them that you would assume that they were an admission on his part concerning the matters that you questioned him about?
A: No.
N.T. 8/15/91 at 25; R.R. 29a.

controlled substances, specifically marijuana, a Schedule I Controlled Substance, and in pursuance of such conspiracy, one or more overt acts were committed in violation of Section 903 of the Pa. Crimes Code," among other [sic] mentioned in attached affidavit was Dan R. osborne [sic]."

16. Mr. Wagner told Dr. Bohn ... that others were involved in the purchase of marijuana and when asked who those unnamed were, he refused to verbalize the name but did write on a piece of paper the name of Terry Harmon....

17. In pursuing the matter with Osborne, on February 21, 1991, Dr. Bohn was told that Osborne gave Wagner ... money, for the sole purpose of obtaining a half pound of marijuana....

18. At the meeting of February 21, 1991, Osborne implicated Harmon as being a past purchaser of marijuana at car washes with Harmon, the two together purchasing from Mr. Wagner. Also, Mr. Osborne said he had met Mr. Harmon at the residence of Richard L. Wagner in Lewistown.

19. On February 25, 1991, Dr. Bohn ... met with Harmon, told him of Wagner's and Osborne's implication of Harmon in marijuana dealings, identified the source of information and inquired as to the verity of this information to which Harmon would not respond, answering neither yes or no.

20. Dr. Bohn held a second meeting with Harmon at which Nancy Carter, Harmon's union president, was in attendance and at which Harmon refused to confirm or deny any allegations concerning his involvement with marijuana or answer any questions put to him by Dr. Bohn.

21. Dr. Bohn attended a third meeting, a grievance hearing, at which Harmon had a third opportunity to deny involvement with marijuana.

22. Based on the conclusion that a person who is wrongly accused will deny the accusation, and Harmon having refused to respond to accusations on three different occasions, Dr. Bohn recommended to Dis-

trict's Board that Harmon (along with Wagner and Osborne) be dismissed.

23. Had Harmon denied any involvement with the alleged conduct, Dr. Bohn would have let his discussion with Harmon serve as a warning.

. . . .

26. On the occasion of his meetings with Harmon, Dr. Bohn advised him that he didn't have to respond to Dr. Bohn's questions if he was afraid he would incriminate himself.

. . . .

28. Richard Wagner, who was subpoenaed to testify, identified the warrant and affidavit implicating him and Osborne, among others, with the purchase of marijuana, but refused to answer any further questions on the advice of his counsel.

29. Osborne testified in open court that Mr. Wagner told Mr. Osborne that Harmon had money involved with him for the purchase of marijuana.

30. Osborne testified in open court that he admitted to Dr. Bohn ... that Harmon was involved in the conspiracy to purchase marijuana set forth on the criminal complaint and attached affidavit charging Mr. Wagner with the offense of criminally conspiring to purchase marijuana.

31. Osborne testified in open court that he had seen Harmon at Wagner's house.

32. Harmon refused to answer ... questions posed by counsel for District pleading the 5th Amendment on grounds of self-incrimination.... (Citations omitted.)

Board's Adjudication, May 18, 1992, Findings of Fact Nos. 16–23, 26, 28–32, at 4–7; R.R. at 143a–146a. Based on these findings, the Board determined that Harmon conspired to purchase marijuana, concluding that Harmon's failure to answer Bohn's questions about the marijuana conspiracy and his unwillingness to testify concerning the conspiracy established his guilt. Harmon appealed to the common pleas court.[6]

---

6. By order dated March 15, 1993, the common pleas court remanded the matter for a second termination hearing. However, the District appealed. For the reasons stated in *Harmon v.*

*Mifflin County School District*, 651 A.2d 681 (Pa. Cmwlth.1994), this Court vacated the common pleas court's March 15, 1993, order and remanded for the common pleas court to address Har-

The common pleas court took no additional testimony and in an opinion and order dated February 27, 1995, sustained Harmon's appeal and directed the District to reinstate him with back pay stating:

It appears to us that Harmon was discharged on the basis of the most tenuous type of hearsay testimony. He was not discharged for refusing to account for his conduct as an employee of the Mifflin County School District. He was discharged for refusing to answer questions of a very general but incriminating nature on the grounds of his constitutional right against self-incrimination. It is clear that Harmon was discharged for refusing to expose himself to the potential criminal prosecution based upon his own testimony despite his constitutional privilege against self-incrimination.

Common Pleas Court Opinion, February 27, 1995, at 5; Appellant's Brief at 51. The common pleas court concluded that the Board's finding that Harmon conspired to purchase marijuana from Wagner was not supported by substantial evidence.

■ On appeal,[7] the District contends that the Board dismissed Harmon based on the substantial evidence of record that he conspired to purchase marijuana, conduct that is improper under Section 514 of the School Code. The District asserts that Harmon's silence in regard to Bohn's questioning constituted an implied admission to the improper conduct. Similarly, the District maintains that Harmon's involvement in the conspiracy may be inferred from his refusal to answer questions at the hearing. In reviewing this appeal, we must consider whether the Board's determination that Harmon conspired to purchase marijuana based on his refusal to answer questions about his involvement in the marijuana conspiracy is supported by substantial evidence. The issues are: (1) whether Harmon's failure to answer Bohn's questions about the marijuana conspiracy is tantamount to substantial evidence

of his involvement in the conspiracy, (2) whether Harmon's assertion of the Fifth Amendment privilege at the hearing was properly construed to be substantial evidence by the Board, and (3) whether the Board must be reversed for construing Harmon's silence, at any time, as substantial evidence that justified his dismissal.

### I. Bohn's Questioning

■ The District argues that Harmon's multiple refusals to answer Bohn's questions at various meetings were implied admissions that he was involved in the marijuana conspiracy. The District cites *L. Washington & Associates v. Unemployment Compensation Board of Review*, 662 A.2d 1148 (Pa.Cmwlth. 1995), in support of this proposition. In *L. Washington*, an unemployment compensation claimant was accused by his employer of the non-criminal conduct of sleeping on the job during a robbery which occurred at the location where the claimant was a posted security officer. This court held that under these circumstances the claimant's failure to respond to the employer's allegations constituted an admission and therefore, was substantial evidence that the claimant was sleeping. Silence constitutes an admission in civil proceedings, "[o]nly when the circumstances are such that one ought to speak and does not. . . ." *Levin v. Van Horn*, 412 Pa. 322, 327, 194 A.2d 419, 421 (1963). (Citation omitted).

■ In the present matter, the circumstances were not such that Harmon should have spoken but did not. Bohn's testimony that Harmon refused to confirm or deny the allegations that he was involved in the marijuana conspiracy was received by the Board without objection. The Board proceeded to find "[o]n the occasion of his meetings with Harmon, Dr. Bohn advised him that he didn't have to respond to Dr. Bohn's questions. . . ." Adjudication at 6, Finding of Fact No. 26; R.R. at 145a. We believe that because Harmon was advised he did not have to answer

mon's contention that the Board's findings were not supported by substantial evidence.

**7.** Our scope of review is limited to a determination of whether there was an error of law, a violation of constitutional rights, or whether

there is substantial evidence to support the necessary findings of fact. *Rice v. Board of Directors of Easton Area School District*, 90 Pa.Cmwlth. 447, 495 A.2d 984 (1985).

656

Bohn's questions Harmon's silence did not justify the conclusion that he was involved in the alleged conspiracy. Harmon was offered the option not to answer, therefore his silence was not an admission. On this evidentiary point, the common pleas court correctly found that the Board erred.

## II. Harmon's Assertion of the Fifth Amendment Privilege

The District also argues that Harmon's assertion of his Fifth Amendment privilege against self-incrimination at the Board hearing is substantial evidence that Harmon conspired to purchase marijuana. We note that school employees, such as Harmon, are afforded explicit procedural safeguards which must be adhered to in order to effectuate a valid dismissal. *Swartley v. Norristown Area School District*, 51 Pa.Cmwlth. 121, 414 A.2d 153 (1980). The District then, bears the burden of proving improper conduct. We also note, that involvement with marijuana does constitute improper conduct. *DeShields v. Chester Upland School District*, 95 Pa.Cmwlth. 414, 505 A.2d 1080 (1986). Critically in this matter, the credibility and weight to be accorded the evidence is solely within the discretion of the Board. *Wilson v. City of Philadelphia, Board of License and Inspection Review*, 16 Pa.Cmwlth. 586, 329 A.2d 908 (1974).

The Board's treatment of Harmon's assertion of the Fifth Amendment privilege raises two significant sub-issues: (A) whether the questions were overbroad and irrelevant and (B) whether Harmon's repeated assertions of the Fifth Amendment privilege in response to questions about the conspiracy were properly considered by the Board as substantial evidence to prove the charge against him.

### A.

Harmon contends that his refusal to answer questions at the hearing does *not*

support the charge that he was involved in the conspiracy. Harmon asserts that the questions were over-broad and did not address his activity between June 1, 1990, and September 24, 1990, the period of time that was relevant to the conspiracy charge. He argues, ergo, that the questions were irrelevant, and therefore his refusal to answer them cannot be construed as substantial evidence.[8] We disagree.

The record reveals that Harmon asserted his Fifth Amendment privilege against self-incrimination in response to a number of concise questions. Harmon refused to answer inquiries regarding: (1) whether he used marijuana while employed by the District, (2) whether he used marijuana with Wagner, (3) whether he acquired or attempted to acquire marijuana, (4) whether he purchased or conspired to purchase marijuana from Wagner, (5) whether he used marijuana or kept marijuana on District grounds, (6) whether he recalled when Dr. Bohn questioned him about his involvement in the marijuana conspiracy, (7) whether he recalled refusing to respond to Dr. Bohn's questions, (8) whether he gave or sold marijuana to any school students, (9) whether he smoked marijuana with Osborne, (10) whether he denied using or purchasing marijuana when questioned by Bohn. See, Notes of Testimony, February 27, 1992, (N.T. 2/27/92) at 8–13; R.R. at 102a–107a. Crucially, Harmon was asked and refused to answer the following question: "Did you contribute any money to Richard Wagner directly or indirectly with a group of other people with the intention of having Mr. Wagner acquire an amount of marijuana for you?" N.T. 2/27/92 at 12–13; R.R. at 106a–107a.

Admittedly, one of the questions that Harmon refused to answer addressed conduct that occurred after the time period set forth in the conspiracy charge but we believe it is fair and reasonable to infer that the rest of

---

8. We note that Harmon cites *Moonlight Mushrooms, Inc., v. Unemployment Compensation Board of Review*, 142 Pa.Cmwlth. 153, 596 A.2d 1264 (1991), in support of the proposition that his refusal to testify is not substantial evidence of his involvement in the conspiracy with Wagner. That case is distinguishable from the present matter because neither the Unemployment Compensation Referee nor the Unemployment Compensation Board of Review, as the ultimate fact-finding authority, credited the claimant's refusal as substantial evidence. Here, the Board has clearly construed Harmon's refusal to be substantial evidence that he was involved in the conspiracy.

the questions concentrated on conduct during the critical period. Prior to testifying before the Board, Harmon was made aware that the charge against him centered on his involvement with Wagner in conspiracy to purchase marijuana. Before Harmon was charged by the District he was questioned three times regarding his involvement with Wagner. The notice of suspension, admitted into the record without objection, specifically charged that Harmon was involved in a conspiracy with Wagner to purchase marijuana between June 1, 1990, and September 24, 1990.[9] The only reasonable conclusion, based upon the whole record, is that Harmon knew the questions addressed his conduct during the period set forth in the conspiracy charge. Also, the questions were concise, not over-broad.

### B.

Harmon also contends that the Board incorrectly inferred that his refusal to testify satisfied the District's burden of producing substantial evidence that he was involved in a conspiracy with Wagner. The Fifth Amendment privilege was historically given great deference. The privilege "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). This expansive statement of the law has steadily been chipped away and a more recent pronouncement is that the Fifth Amendment "does not forbid adverse inferences against parties to civil actions where they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). "[I]n proper circumstances silence in the face of accusation is a relevant fact not barred by the Due Process Clause." *Id.* at

319, 96 S.Ct. at 1558. This court has candidly stated that the fact-finder may make an adverse inference where a party in a civil proceeding exercised his Fifth Amendment privilege against self-incrimination. *Caloric v. Unemployment Compensation Board of Review*, 70 Pa.Cmwlth. 182, 452 A.2d 907 (1982).

In the present matter, Harmon did not respond to the District's charge that he conspired with Wagner to purchase marijuana. Instead, Harmon asserted his Fifth Amendment privilege and refused to answer any questions about his involvement with Wagner. The Board appropriately inferred from Harmon's silence that he conspired with Wagner to purchase marijuana. In this we find no error.

### III. Harmless Error

As previously stated, we affirm the common pleas court ruling that the Board erred in treating Harmon's failure to respond to Bohn's questions as substantial evidence of Harmon's involvement in the conspiracy. The pivotal question then becomes whether Harmon's failure to testify, constituted such substantial evidence, standing without the Bohn questioning, that the District met its burden of persuasion, or in other words, if the Board's reliance on Harmon's failure to answer Bohn's questions was harmless error.

Whether a fact-finder commits harmless error is a question for appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that an error was harmless beyond a reasonable doubt. *Vitelli v. City of Chester*, 119 Pa.Cmwlth. 58, 545 A.2d 1011 (1988). The erroneous reliance on evidence will be deemed harmless where the evidence was merely cumulative and not necessary to the conclusion of law. *Muehlieb v. City of Philadelphia*, 133 Pa. Cmwlth. 133, 574 A.2d 1208 (1990).

Harmon's assertion of his privilege against self-incrimination in response to specific questions about his involvement in the conspiracy and the adverse inference drawn

---

9. Harmon refused to answer the following question. "Were you using marijuana in that general space in time area about the 27th of February, 1991?" N.T. 2/27/92 at 12; R.R. at 106a.

therefrom persuaded the Board that Harmon conspired with Wagner to purchase marijuana. Harmon's failure to respond to Bohn's questions tended to prove this same fact. Therefore, any inference drawn from Harmon's refusal to answer Bohn was cumulative and the Board's reliance was harmless.[10]

Accordingly, we reverse the common pleas court and reinstate the Board's dismissal of Harmon.

### ORDER

AND NOW, this 25th day of October, 1996, the order of the Common Pleas Court of Mifflin County in the above-captioned matter is reversed and the decision of the Mifflin County School District Board of School Directors dismissing Appellee Terry L. Harmon is reinstated.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. The School District was required to prove by substantial evidence that Harmon conspired with and provided money to Wagner to purchase marijuana. At the hearings before the school board, Wagner asserted his Fifth Amendment rights, and Osborne testified he had been told by Wagner that Harmon was involved in the conspiracy, but had no first hand knowledge of such involvement.

Aside from such hearsay evidence, the School District proved only that Harmon had refused to answer Dr. Bohn's questions, which Dr. Bohn told him he need not answer, and that Harmon had also asserted his Fifth Amendment rights.

The majority has properly held that the refusal to answer Dr. Bohn's questions was not substantial evidence, but that Harmon's assertion of his Fifth Amendment rights proved the School District's case, citing *Caloric Corp. v. Unemployment Compensation Board of Review*, 70 Pa.Cmwlth. 182, 452 A.2d 907 (1982). However, in *Caloric*, in affirming the claimant's right to unemployment benefits, this court held that the inference that might be drawn from use of the self-incrimination privilege went only to the credibility of the employer's evidence and did not provide substantial evidence of willful misconduct. In *Caloric*, this court said:

> [A]lthough a trier of fact may draw an adverse inference from a party's silence, such inference cannot be used as a substitute for the employer's failure to introduce substantial evidence to meet its burden of proving that an employee's discharge resulted from willful misconduct.

*Id.* 452 A.2d at 910.

Accordingly, I would affirm the order of the trial court.

KELLEY and SMITH, JJ., join in this dissent.

---

10. We note that although the District alluded to Osborne's statements that Harmon conspired to purchase marijuana, the District failed to state that this testimony constituted substantial evidence in support of the Board's findings in the statement of questions. Pa.R.A.P. 2116 states that "no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Even if the District intend-ed to argue that the Osborne testimony was, in and of itself, substantial evidence of Harmon's involvement in the conspiracy, this particular claim was waived because the District failed to properly preserve it for appellate review by specifically including it in the statement of questions. *Commonwealth v. Kittelberger*, 420 Pa.Super. 104, 616 A.2d 1 (1992).