**Michael STUGART, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2013.
Decided Feb. 19, 2014.

John Person, Williamsport, for petitioner.

Paul R. Jordan, Assistant Counsel, Harrisburg, for respondent.

OPINION PER CURIAM.

Michael Stugart (Claimant) petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) November 21, 2012 order affirming the Referee's decision denying him unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] There are two issues before this Court: (1) whether the UCBR based its decision entirely on hearsay evidence; and, (2) whether the UCBR erred by affirming the Referee's determination that Claimant voluntarily quit his employment with Williamsport Steel Container Company (Employer). We affirm.

Claimant was employed full-time as head painter for Employer from June 13, 2011 through July 20, 2012, when he left work and did not return. Thereafter, Claimant applied for UC benefits. On August 6, 2012, the Scranton UC Service Center mailed its determination denying Claimant UC benefits pursuant to Section 402(b) of the Law because he voluntarily quit his job with Employer without a necessitous and compelling reason. Claimant appealed from the UC Service Center's determination. A Referee hearing was held on September 11, 2012, at which Claimant appeared pro se. On September 12, 2012, relying upon Claimant's testimony and Employer's questionnaire and attachments thereto, the Referee made the following four findings of fact:

1. [Claimant] was last employed at [Employer] as a full-time head painter at the rate of $9 per hour from June 13, 2011 through his last day worked of July 20, 2012.

2. On July 20, 2012, **[Claimant] was sent home for the day** after blaming his production issues on his theory that [United States (U.S.) ] Government Officials were using neuron satellite monitoring to remote control his thinking and actions at work and also his opinion that

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

office staff was being tortured by the government.

3. **The employer advised [Claimant] that it was his choice to come back to work Monday but that they would not tolerate hearing about said opinions/theories in regards to the government any longer.**

4. [Claimant] did not return to work as scheduled on July 23, 2012 or thereafter.

Referee Dec. at 1 (emphasis added).

Based upon her findings, the Referee concluded that Claimant "did not have necessitous and compelling reason[s] for leaving his employment . . . and, therefore, he is ineligible for benefits in accordance with Section 402(b) of the Law." Referee Dec. at 2. Claimant appealed to the UCBR. On November 21, 2012, the UCBR adopted the Referee's findings and conclusions and affirmed her decision.[2] Claimant appealed to this Court.[3]

Claimant argues that the UCBR erred by basing its decision entirely on objected to and uncorroborated hearsay. "[H]earsay is defined as a 'statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted.' Pa.R.E. 801(c)." *Yost v. Unemployment Comp. Bd. of Review,* 42 A.3d 1158, 1163 (Pa.Cmwlth.2012). "It has long been established in this Commonwealth that hearsay evidence, *properly objected to,* is not competent evidence to support a finding of the [UCBR], whether or not corroborated by other evidence." *Myers v. Unemployment Comp. Bd. of Review,* 533 Pa. 373, 377, 625 A.2d 622, 625 (1993); *see also Walker v. Unemployment Comp. Bd. of Review,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976). However, "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the [UCBR], [i]f it is corroborated by any competent evidence in the record. . . ." *Walker,* 367 A.2d at 370.

However, under Pa.R.E. 803(25), a party's out-of-court admission is an exception to the hearsay exclusion. This Court has long held "that words of a party constitute an admission and therefore may always be used against him." *Evans v. Unemployment Comp. Bd. of Review,* 86 Pa.Cmwlth. 297, 484 A.2d 822, 827 (1984). This exception is based upon the fact that, unlike hearsay, a party's admission is personal first-hand knowledge, and it may support a referee's finding of fact. *Braun v. Unemployment Comp. Bd. of Review,* 96 Pa. Cmwlth. 238, 506 A.2d 1020 (1986).

Here, the Referee made her decision based upon the pertinent available records, consisting of, *inter alia,* Claimant's and Employer's questionnaire answers with attachments, and Claimant's testimony. At the commencement of the hearing, after confirming that Claimant reviewed the file before the hearing, the Referee stated: "Let me go ahead and go through the documents with you. **If you have any objections** to any of them being entered, you can **let me know,** okay?" Certified Record (C.R.) Item 9, Notes of Testimony, September 11, 2012 (N.T.) at 1. Claimant said, "Okay." N.T. at 1 (emphasis added). The Referee proceeded to describe each

2. On December 3, 2012, Claimant filed a request for the UCBR to reconsider its decision. By order issued December 11, 2012, the UCBR denied Claimant's reconsideration request.

3. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review,* 906 A.2d 657 (Pa. Cmwlth.2006).

document in the file. N.T. at 2. Thereafter, the following exchange took place:

> R **Do you have any objection** to any of the documents being entered into the record today?
>
> C Yeah. Some of them aren't completely honest, like some of the statements I've read weren't actually what came out of my mouth.
>
> R Okay. And **do you have any objections** to anything?
>
> C Yeah, some of them weren't actually facts, like, some of the statements that were stated, and there was also another incident that I was written up for that wasn't actually my fault but then documented in there, where someone was involved with lining [the parts] incorrectly.
>
> R Okay. But the documents that are actually in here, **do you have any legal objection to any of them** being entered into the record today?
>
> C **No, they can be entered.** I just want you to know that they aren't exactly correct.
>
> R Okay. All right. I'll go ahead and enter them in.

N.T. at 1–2 (emphasis added).

The Referee described every document, including Employer's questionnaire answers and attachments. The Referee then asked Claimant three separate times if he had any objections to those documents. Claimant objected to the August 1, 2011 lining incident about which he had been warned, and said that the documents are "not exactly correct," and "some of the statements ... weren't actually what came out of my mouth." N.T. at 1–2. Ultimately, however, Claimant told the Referee that the documents "can be entered." N.T. at 2. The Referee, relying on Claimant's statement, entered the documents into evidence.

The Pennsylvania Supreme Court has long held that " 'any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.' " *Vann v. Unemployment Comp. Bd. of Review,* 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985) (quoting *Groch v. Unemployment Comp. Bd. of Review,* 81 Pa.Cmwlth. 26, 472 A.2d 286, 288 (1984)). More recently, this Court clarified that, "referees should reasonably assist pro se parties to elicit facts that are probative for their case." *Hackler v. Unemployment Comp. Bd. of Review,* 24 A.3d 1112, 1115 (Pa.Cmwlth. 2011).

> The referee has a responsibility ... to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to insure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, *thoroughly developed,* entitled the claimant to benefits.

*Id.,* 24 A.3d at 1115 (quoting *Bennett v. Unemployment Comp. Bd. of Review,* 66 Pa.Cmwlth. 455, 445 A.2d 258, 259 (1982)). Although the law requires that the referee reasonably assist in development of the facts necessary to render a decision, "the referee is not required to become and should not assume the role of a claimant's advocate." *McFadden v. Unemployment Comp. Bd. of Review,* 806 A.2d 955, 958 (Pa.Cmwlth.2002). **"The referee need not advise an uncounseled claimant on specific evidentiary questions or points of law, nor need the referee show any greater deference to an uncounseled claimant than that afforded a claimant with an attorney."** *Brennan v. Unemployment Comp. Bd. of Review,* 87 Pa. Cmwlth. 265, 487 A.2d 73, 77 (1985) (citation omitted; emphasis added).

Here, Claimant said he reviewed the documents and the Referee told him he could object to them. The Dissent contends that, "[a]t a minimum, the Referee should have ascertained which specific statements Claimant considered false to satisfy her duty under 34 Pa.Code § 101.21(a)." Dissenting Op. at 616. Contrary to the Dissent's contention, the record is clear that Claimant lodged a specific objection only about the August 1, 2011 warning,[4] and then generally stated that "some" of the facts were not correct, and "some" of the statements therein did not accurately reflect what he said. N.T. at 2. Ultimately, however, after Claimant objected to the document's admission, he recanted his objection. We conclude that given Employer's absence from the Referee hearing, notwithstanding Claimant's objection and his later recanting of that objection, our review of the record will be limited to Claimant's documents and testimony. Thus, we will review that evidence to determine whether **Finding of Fact 3, which is the only finding of fact Claimant challenges,** is "supported by substantial, credible, and admissible evidence." Pet. for Review ¶ 7b. **Finding of Fact 3 reads:** "[Employer] advised [Claimant] that it was his choice to come back to work Monday but that they would not tolerate hearing about said opinions/theories in regards to the government any longer." Referee Dec. at 1.

"Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Review,* 927 A.2d 675, 676 n. 1 (Pa. Cmwlth.2007) (quotation marks omitted). This Court has held:

> In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review,* 739 A.2d 616, 618 (Pa.Cmwlth. 1999).

> In unemployment compensation matters, the [UCBR] is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. Findings made by the [UCBR] are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings. In the present case, the [UCBR] adopted the referee's findings of fact and conclusions of law.

*Goppman v. Unemployment Comp. Bd. of Review,* 845 A.2d 946, 947 n. 2 (Pa.Cmwlth. 2004).

Here, Claimant completed a Claimant Questionnaire, in pertinent part, as follows:

"Were you discharged or suspended?" "Suspended." C.R. Item 2 at 1.

"Please list the **reason**(s) for your actions which caused you to be discharged or **suspended.**"

4. Notably, although Claimant objected to the August 1, 2011 warning, which had no impact upon his employment separation, he admitted in his September 2011 self-performance evaluation:

> I know that it's not the fault of anyone in [Employer's] facility that those parts were lined with the wrong lining and it wasn't Joe's fault that we were written up for it. **Sometimes** things don't happen perfectly, but it's a[n] unusual situation because of some facts that occurred. Some United States gover[n]ment officials were using brain wave satellite signals to make it happen.

C.R. Item 3 at 6 (emphasis added).

**I love to help improve the quality of life.** I love to help the greatest individuals of the past, present and future. **I spoke about individuals being screwed with by horrible U.S. gov. officials that are neural satellite employees at work. I spoke about U.S. gov. officials that are neural satellite employees messing up quality and quantity of production.**

C.R. Item 2 at 1 (emphasis added).

On the Employment Separation Questionnaire, Claimant answered the question, "I am unemployed because," in pertinent part:

**[I]'m a very great individual doing very great things to help improve the quality of life and some horrible people don't like it.... Some U.S. gov. official was tampering with my mind when [I] was creating this and [I] was trying to write a more efficient message,** but [I] can't do what isn't possible to do. **I was** also doing far more than the production quotas and creating and conserving funds while [I] was a[n] employee at [Employer] as well as **helping improve the quality of life.**

C.R. Item 2 at 3 (emphasis added).

Thereafter, the UC Service Center conducted an oral interview during which Claimant was asked: "[W]hy did you not return to work on the Monday after they sent you home?" C.R. Item 4 at 2. Claimant responded:

The supv [J]oe told me not to come back to work unless [I] completely changed my opinion of everything—[I] **was told not to come back to work unless [I] completely stop talking a[ ]bout what was happening—**

I spoke to a lady when [I] picked up my check—[I] heard that [I] came back as a no call no show—[I] told her [I] was told not to come back—she told me [I] **was told [ ] not to talk about the stuff [I] had been talking about**—[I] told her because [I] care [I] could not stop talking about it.

*Id.* (emphasis added). On Employer's Personnel Performance Evaluation, which Claimant completed and submitted to Employer in September 2011, Claimant wrote:

**I Michael W. Stugart know that it's very important to inform individuals** of these sort[s] of things and some others as well. I think it's less likely to occur if [I], myself and others do something rather than nothing. I think it's more likely to occur if the United States gover[n]ment officials do those sorts of things and are not even scared of being punished for their actions. I would be crazy to accuse some of the United States brain wave satellite gover[n]ment officials of doing things that they actually didn't do.

C.R. Item 3 at 6 (emphasis added).[5]

At the hearing, Claimant testified that, on July 20, 2012, Employer's Parts Department Supervisor Joseph Scocchera (Scocchera) was concerned that production was down, and he asked Claimant to explain why. Claimant stated that it was because U.S. government officials, through the NSA's[6] neural satellite monitoring system, was "messing with the people that were working there, and it was messing with production and quality."[7] N.T. at 3,

5. Claimant admitted to the Referee that he drafted the September 2011 performance evaluation and submitted it to Employer. *See* C.R. Item 3 at 3–7; *see also* N.T. at 6.

6. Presumably, Claimant is referring to the National Security Agency.

7. Claimant described that "human beings and animals can be remote[-]controlled by neural satellite technology," and the government can "record what a person sees, hears, [and] their movements." N.T. at 4.

8. Claimant explained that Scocchera "didn't want to talk about that or be informed about it...." N.T. at 3. Claimant admitted that, approximately six months prior to the July 20, 2012 incident, he discussed these same concerns with Scocchera and Employer's Production Manager Curtis Fox: "[T]hey told me just to worry about myself and not to worry about others." N.T. at 7.

It is well settled that "[a] voluntary quit requires a finding that the claimant had a conscious intention to leave employment." *Procyson v. Unemployment Comp. Bd. of Review,* 4 A.3d 1124, 1127 (Pa.Cmwlth.2010). This Court has held that:

> Whether a Claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to this Court's review **and must be determined from a totality of the facts surrounding the cessation of employment.** 'It is a claimant's burden to prove that his separation from employment was a discharge.' If a claimant proves that he was discharged, then the burden to prove that the claimant was discharged for willful misconduct is on the employer. If a claimant fails to prove that he was discharged, then the claimant has the burden to prove necessitous and compelling reasons for quitting.

*Middletown Twp. v. Unemployment Comp. Bd. of Review,* 40 A.3d 217, 224 (Pa.Cmwlth.2012) (citations omitted; emphasis added).

> The principle of law which has been attached as the test for decision in this class of case is that of **whether the language employed by the employer possesses the immediacy and finality of a firing;** if it does, the employee has been discharged; if it does not, and the offended employee leaves, the case is one of voluntary quit.

*Keast v. Unemployment Comp. Bd. of Review,* 94 Pa.Cmwlth. 346, 503 A.2d 507, 509 (1986) (emphasis added).

Here, Claimant made the following admissions:

- He was sent home for the day because of his "talk" about government monitoring and torture of Employer's employees. Unchallenged Referee Finding of Fact 2.
- He was suspended from his employment. C.R. Item 2 at 1.
- He left work on July 20, 2012 and never called or reported to work. Unchallenged Referee Finding of Fact 4.
- He "love[d] to help improve the quality of life. I love to help the greatest individuals of the past, present and future. I spoke about individuals being screwed with by horrible U.S. gov. officials that are neural satellite employees at work. I spoke about U.S. gov. officials that are neural satellite employees messing up quality and quantity of production." C.R. Item 2 at 1.
- He felt it was "very important to inform individuals of these sort[s] of things and some others as well. I think it's less likely to occur if [I], myself and others do something rather than nothing." C.R. Item 3 at 6.

Claimant specifically contends that Employer gave him an ultimatum on July 20, 2012, in that he could only return if he "agreed to do something that was impossible for him to do [i.e., not talk about government torture and mind control at work]." Claimant Br. at 16.

In *Monaco v. Unemployment Compensation Board of Review,* 523 Pa. 41, 565 A.2d 127 (1989), after two employees protested a change in work conditions and

said they were going to leave work to protest at union headquarters, "[t]he manager replied that they could leave if they did not like the situation, 'there's the door.' He also stated 'as soon as you walk out from that door, out of my place, you quit the job.' " *Id.* at 44, 565 A.2d at 129. The Pennsylvania Supreme Court held that, under the circumstances of that case, although employer gave the employees an ultimatum, such language did not provide the finality or immediacy required to establish a discharge and, therefore, because the employees did not return, they were deemed to have voluntarily quit. This Court has likewise held that, under circumstances in which continuing work was available to the employee, his failure to return to work after the employer said, " 'if [you don't] like working for me ..., I suggest you put your truck out front and go home,' " was a voluntary quit. *Bell v. Unemployment Comp. Bd. of Review,* 921 A.2d 23, 25 (Pa.Cmwlth.2007). Thus, where an employee is given an ultimatum to remain at work or to leave, there is not sufficient finality and immediacy to establish even a constructive discharge.

Regardless of whether "choice" or "ultimatum" is used, Claimant admits in his above-quoted documents and testimony that Employer "would not tolerate hearing about said opinions/theories in regards to the government any longer." Referee Finding of Fact 3, in pertinent part. The ultimate decision of whether Claimant desired to continue working with Employer without talking about government torture and mind control rested solely with Claimant, who is the only person who can command what comes out of his mouth. It is undisputed that Claimant elected not to return to work.

Claimant admitted **that it was his *talking about* his beliefs at work that Employer found objectionable.** There is nothing in Claimant's testimony or the record to show that Employer objected to Claimant merely **having** these particular beliefs, or that his job was in jeopardy for that reason. It was Claimant's decision to elect to stop talking about his beliefs at work or not return to his job; he chose the latter.

The facts of this case are similar to those in *Mathis v. Unemployment Compensation Board of Review,* 64 A.3d 293, 294 (Pa.Cmwlth.2013) and, therefore, *Mathis* is controlling. In *Mathis,* the claimant covered his company identification (I.D.) badge where it reflected that the employer was a Christian company. Claimant averred that the mission statement on the I.D. badge violated his religious freedom. The employer notified the claimant that he could not work if he did not wear his badge as required. Claimant left work and later sought UC benefits contending that he was fired. However, based upon evidence that employer did not require employees to agree with its mission statement, but did require them to wear the I.D. badge, this Court concluded:

> [W]e are persuaded that there is substantial evidence, in the form of testimony from both Employer and from Claimant himself, via his internet initial claim report, that ... Employer in fact offered Claimant a real choice between two alternatives: he could either wear the [I.D.] badge as required and continue his employment, or he could leave, and therefore end the work relationship, and Claimant *chose* to leave. We will not disturb the [UCBR's] determination that Claimant voluntarily quit his employment.

*Id.* at 299.

The Dissent asserts that *Mathis* is distinguishable because, unlike here, there was no conflict in the evidence about the nature of the choice the claimant was giv-

en. Yet, here, as in *Mathis,* Claimant had the option to stop talking about government torture and mind control while at work and continue his employment, or he could elect not to return. Regardless of Claimant's beliefs, or what Employer felt about Claimant's beliefs, Claimant's talk about mind control, torture and sexual abuse, particularly of children, had no place at his job.[8] Claimant is entitled to his beliefs, but Employer can rightfully give Claimant an option to work without expressing them, or not to return to work. In addition, Employer used no language which indicated or created the impression of "the immediacy and finality of firing." *Keast; see also Monaco.*

The UCBR is the ultimate factfinder. *Sanders.* Here the UCBR adopted the Referee's findings. Examining Claimant's testimony in the light most favorable to Employer, and giving Employer the benefit of any inferences that can logically be drawn therefrom as we must, we hold that Claimant had a choice, and opted not to return to work for Employer. *Id.* Therefore, he voluntarily quit his employment.[9] *See Monaco; see also Mathis, Bell.*

> Whether an employee has cause of a necessitous and compelling nature to quit employment is a legal conclusion subject to appellate review. In order to show necessitous and compelling cause, the **claimant must establish** that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) **like circumstances would compel a reasonable person to act in the same manner;** 3) **she acted with ordinary common sense; and** 4) she **made a reasonable effort** to preserve her employment.

*Comitalo v. Unemployment Comp. Bd. of Review,* 737 A.2d 342, 344 (Pa.Cmwlth. 1999) (citation and quotation marks omitted; emphasis added). Under the circumstances surrounding this case, the UCBR adopted the Referee's determination that Claimant did not present any necessitous and compelling reason for quitting. Since Claimant did not present evidence that he faced a real pressure to leave his employment, that a reasonable person would have acted in the same manner, that he acted with ordinary common sense, and where it is clear that he made no reasonable effort to preserve his job, Claimant did not establish that he had a necessitous and compelling cause to quit his job.

Viewing the totality of the circumstances in a light most favorable to Employer, the record is clear that Claimant made the conscious and voluntary decision to leave his employment without a necessitous and compelling reason. Thus, the UCBR did not err as a matter of law by affirming the Referee's finding that Claimant voluntarily terminated his employment.

Based upon the foregoing, the UCBR's order is affirmed.

*ORDER*

AND NOW, this 19th day of February, 2014, the Unemployment Compensation

8. At the hearing, the Referee asked Claimant why the U.S. government would need to control the minds of Employer's employees, Claimant answered: "It varies in many, many ways. Why would it benefit them to rape their little children that they raped that I testified and provided many proof, inside information to, about the little kids they sexually abused, sexually raped, and tortured? Why would they do that?" N.T. at 7.

9. Moreover, if Employer intended to terminate Claimant's employment, it could have done so for willful misconduct based upon Claimant's failure to comply with Employer's repeated requests/warnings. The fact that Employer did not do so illustrates its intention to retain Claimant if he stopped his "talk" at work.

Board of Review's November 21, 2012 order is affirmed.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. Claimant lodged an objection, twice, to the admission of Employer's questionnaire for the stated reason that it contained false statements. This is sufficient to lodge a hearsay objection. More importantly, I disagree with the majority's conclusion that Claimant's testimony corroborated the dispositive statements in Employer's questionnaire. Because the questionnaire did not satisfy either prong of *Walker v. Unemployment Compensation Board of Review,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976),[1] there is no substantial evidence to support the Board's finding that Claimant voluntarily resigned and was not discharged from his job.

Employer did not attend the hearing in question. The Referee sought to admit all of the documents in Claimant's claim record, including Employer's questionnaire, which recited Employer's version of Claimant's separation from employment and was submitted to the Department of Labor and Industry in response to an inquiry from the Unemployment Compensation Service Center. Claimant objected generally to the truth of the statements in "[s]ome of" the documents. Notes of Testimony, September 11, 2012, at 2 (N.T. ——).[2] The Referee acknowledged Claimant's objection with a simple "OK" and then asked, again, if he objected to the entry of the documents into the record. On the third request, Claimant acquiesced. In my view, Claimant's eventual acquiescence does not change the fact that he objected to the truth of the matters asserted in the claim record documents, which is the same as a hearsay objection.

It is true, as the majority observes, that a referee should not assume the role of an advocate for a claimant who is not represented at the hearing. However, here, the Referee was on notice that Claimant disputed the veracity of statements contained in the documentary record. Later in the hearing Claimant specifically challenged the assertion in Employer's questionnaire that he was sent home on his last day with the "choice whether to come back on Monday or not." N.T. 5. It was clear that Claimant and Employer had markedly different versions of the circumstances surrounding Claimant's separation from employment, and this triggered the Referee's

1. In *Walker,* this Court held that "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record." *Walker,* 367 A.2d at 370.

2. The majority states that Claimant "lodged an objection about the August 1, 2011 warning." Majority op. at 609. The relevant exchange was as follows:

> [Referee:] Do you have any objection to any of the documents being entered into the record today?
> [Claimant:] Yeah. Some of them aren't completely honest, like, some of the statements I've read weren't actually what came out of my mouth.
> [Referee:] Okay. And do you have any objections to anything?
> [Claimant:] Yeah, some of them weren't actually facts, like, some of the statements that were stated, and there was also another incident that I was written up for [on August 1, 2011] that wasn't actually my fault but then documented in there, where someone was involved with lining it incorrectly.

N.T. 2. Claimant's objection was lodged to "the documents being entered into the record today," not to a particular document or a particular statement. The reference "another incident that I was written up for [on August 1, 2011] that wasn't actually my fault" was offered as an example of an untruthful statement.

duty to offer "every assistance compatible with the impartial discharge of [her] official duties," 34 Pa.Code § 101.21(a). At a minimum, the Referee should have ascertained which specific statements Claimant considered false to satisfy her duty under 34 Pa.Code § 101.21(a). Notably, the regulation does not direct a referee to offer assistance to an employer who chooses not to attend the hearing.

Even assuming Claimant did not properly object to the admission of Employer's questionnaire, the hearsay statements in that questionnaire were not corroborated by Claimant's testimony. Employer's questionnaire stated that Claimant's supervisor informed him on his last day of work that he could "come to work on Monday but he could not talk about government satellite waves or torturing any longer during work hours." Certified Record (C.R.) Item No. 3, at 4. Claimant testified emphatically that his supervisor "told me not to come back if my opinion didn't change completely." N.T. 5, 7.[3] There is a qualitative difference between these two versions. Being told not to volunteer an opinion is vastly different from being ordered to change one's world view.[4]

Claimant testified to his belief that the government's neural satellite technology was interfering with production at Employer's facility. Thus, whenever his supervisors asked him why production was not meeting expectations, Claimant faced a catch-22. In order to respond to his supervisors he had to voice the very opinions Employer sought to quell. The majority observes that Claimant "is the only person who can command what comes out of his mouth." Majority op. at 613. That is certainly a physiological truth. However, in Claimant's view, it was *because of* Employer's inquiries that he was compelled to speak about his beliefs to his "coworker," *i.e.*, his supervisor.

3. The UC Service Center's record of oral interview with Claimant, cited by the majority, also supports Claimant's version. When asked why he did not return to work on the Monday after he was sent home Claimant responded:

> The [supervisor] [J]oe told me not to come back to work *unless [I] completely changed my opinion of everything*—[I] was told not to come back to work unless [I] completely stop talking about what was happening[.]

C.R. Item No. 4 at 2 (emphasis added). Claimant's insistence, both before and at the hearing, that Employer expected him to change his "opinion of everything" is directly contrary to the majority's assertion that "[t]here is nothing in Claimant's testimony or the record to show that Employer objected to Claimant merely **having** these particular beliefs, or that his job was in jeopardy for that reason." Majority op. at 613 (emphasis original).

4. *Mathis v. Unemployment Compensation Board of Review,* 64 A.3d 293 (Pa.Cmwlth. 2013), on which the majority relies as "controlling," is distinguishable. In that case, based upon an examination of the entire record, this Court concluded there was "substantial evidence, in the form of testimony from both Employer and from Claimant himself, ... that on January 23, 2012 Employer in fact offered Claimant a real choice between two alternatives: he could either wear the ID badge as required and continue his employment, or he could leave, and therefore end the work relationship, and Claimant *chose* to leave." *Id.* at 299 (emphasis original). There was no conflict in the evidence about the nature of the choice given to the claimant, and the choice was legitimate: follow the dress code if you want to work.

Here, by contrast, there was a conflict in the evidence about the nature of the choice given Claimant. The only evidence to support Employer's version was Employer's questionnaire, a hearsay document, submitted to the Department in advance of the hearing. Claimant's unrebutted testimony was that he was presented with a Hobson's choice of either changing his world view or not returning to work. Stated another way, Claimant believed he was not able to return to work "because he was asked to do something that he felt was impossible for him to do." Claimant's Brief at 14.

The Referee credited Claimant's testimony, as was necessary to use it as corroborating evidence. This is not to say that the Referee shared Claimant's beliefs about what was causing Employer's production to slow down. Claimant's unrebutted testimony was that he was dismissed from work unless and until he changed his beliefs. It is a dismissal, not a voluntary resignation, when an employer tells an employee not to return to work unless he changes any belief, whether it is the cause of global warming or whether jury commissioners should be abolished.

It was Employer that had a choice in this proceeding. It made the choice not to attend the hearing and present evidence. As a result, the record does not support the Board's conclusion that Claimant voluntarily quit his employment without a necessitous and compelling reason. Accordingly, I would reverse.