# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Lewis, : 
              Petitioner : 
  : 
         v. : No. 1718 C.D. 2016
  : Submitted: February 17, 2017
Unemployment Compensation : 
Board of Review, : 
           Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: April 3, 2017**

Scott Lewis (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) concluding that Claimant is ineligible for UC benefits under Section 402(b)[1] of the UC Law (Law). On appeal, Claimant argues that he did not voluntarily quit his employment with

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). Section 402(b) provides, in relevant part: "An employe shall be ineligible for compensation for any week-- . . . (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in [']employment['] as defined in this act . . . ." Id.

Shaw Industries, Inc. (Employer) and should not be found ineligible for benefits under either Section 402(b) or 402(e)[2] of the Law. We affirm.

Claimant was employed as a maintenance supervisor for Employer from June 27, 2011 to June 16, 2016. (Board Decision, Findings of Fact (FOF) ¶ 1.) The terms of the separation are in dispute. Claimant applied for UC benefits on June 16, 2016, alleging that he was discharged by Employer. (Internet Initial Claim at 1, C.R. at Item 2.) Employer filed an answer, alleging that Claimant "walked out." (Employer's Notice of Application, C.R. at Item 3.) On June 30, 2016, a UC Service Center found that "Claimant was discharged as the result of unsatisfactory work performance" and determined that "Claimant is eligible for benefits under Section 402(e) of the [Law]." (Notice of Determination, C.R. at Item 4.) Employer appealed, and the matter was assigned to a UC Referee for hearing and disposition.

A hearing was held on August 5, 2016, at which Claimant and Steve Spoharski, Employer's general manager (General Manager) testified. General Manager testified as follows.[3] Claimant, General Manager, and Employer's Plant Supervisor were called into the office of Employer's owner, Jason Fry (Owner). Employer had received an influx of orders and was short-staffed due to recent layoffs. The group thought that Claimant was the right person to help take on a project assembling storage racks for the warehouse. Owner told Claimant that they wanted Claimant to start working some 10-hour days to help Employer complete

---

[2] 43 P.S. § 802(e). Section 402(e) provides: "An employe shall be ineligible for compensation for any week-- . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is [']employment['] as defined in this act." Id.

[3] General Manager's testimony is found on pages 3-7 of the Hearing Transcript. (C.R. at Item 8.)

the project. Upon hearing this from Owner, Claimant dropped his head and did not speak. The Plant Supervisor added that the overtime was only short-term so that Employer could get through an especially busy time. Claimant became upset and replied that Employer could have had this task completed that day if more people were assigned to the project. Employer had no extra people available to help that day, though previous to the conversation in Owner's office, General Manager had told Claimant that he was trying to get some extra people to help with the project on Saturday. Owner stated to Claimant that "there's no reason to get . . . heated or having any kind of an attitude." (Hr'g Tr. at 5, C.R. at Item 8.) Claimant responded by stating that he was in a bad mood when he arrived at work that morning, to which Owner replied that Claimant cannot let outside influences impact his work. Owner said something to the effect of "I don't [care] about your mood. I have a business to run." (Id. at 8.) Claimant stated that he was upset that he could not get into his work area that day due to equipment placed in front of his area. General Manager stated that the reason the storage racks needed to be assembled was so that such equipment could be properly removed and stored on the racks. Claimant never replied. Owner asked Claimant what he was upset about and asked whether Claimant was refusing to work. Claimant responded by walking out of the office. (Id.)

While Claimant was walking away, Owner asked Claimant "if that was it." (Id. at 5.) Claimant did not respond and continued to walk away. Owner asked "is this your notice?" (Id.) Claimant remained silent. Owner then said "well, I'd take this as your notice." (Id.)

General Manager followed Claimant to his work area and asked why he was so upset. Claimant responded "I guess this is it." (Id.) General Manager

3

responded "I would say so." (Id.) Claimant asked General Manager if he could get UC benefits, to which General Manager responded that he did not know and that Claimant could submit a claim. Claimant then asked if General Manager "considered what he did was insubordination." (Id.) General Manager responded "you walked out on [Owner]." (Id.) General Manager then asked Claimant to turn over his keys. General Manager testified that Claimant was not disciplined; Claimant "just kind of walked out and never really answered any of the questions." (Id.) General Manager understood Claimant's action as quitting his employment.

Claimant testified[4] that the conversation in Owner's office made him feel degraded. Owner's statement that he did not care about Claimant's mood, in particular, made Claimant feel that Employer did not care about him. Claimant testified that Owner told him when he was walking out of Owner's office to "consider this your notice." (Id. at 7.) Claimant further testified that after leaving Owner's office, General Manager came to Claimant's office to talk about the incident. General Manager was soon called out of the room. Upon his return, General Manager said "[t]hat's it. I'm going to need your keys." (Id. at 8.) Claimant further testified that he was upset that he was not getting help with the racks despite the fact that Claimant was not the person who was in charge of the racks.[5]

The Referee issued a decision on August 16, 2016. The Referee found that Claimant left his work because "[Owner] did[ not] care about him, and [Claimant] thought he was degraded." (Referee Decision, Findings of Fact ¶ 20.) The Referee

---

[4] Claimant's testimony can be found at pages 7-11 of the Hearing Transcript.
[5] The Referee asked the parties for their consent to rule under Section 402(b) of the Law in addition to Section 402(e) if she found it necessary. (Hr'g Tr. at 9-10.) Claimant and General Manager consented. (Id.)

4

concluded that "[C]laimant has not provided any reasonable explanation as to why he did not stay and work on the project [E]mployer had assigned to him." (Id. at 3.) The Referee concluded that benefits must be denied under Section 402(b) of the Law because Claimant did not meet his burden of showing cause of a necessitous and compelling nature for leaving his employment. (Id.)

Claimant appealed to the Board, which made the following relevant findings of fact:

> 2. On June 16, 2016, [G]eneral [M]anager, [Employer's] plant supervisor, and [Owner] met with [C]laimant and asked [C]laimant to work additional hours (i.e. 10 hour days) to assemble racking in the warehouse.
> 3. The plant supervisor explained to [C]laimant that the additional hours were temporary, and [C]laimant replied "We could have this stuff done today if you'd have some help."
> 4. [E]mployer advised [C]laimant that it was assembling a crew to come in Saturdays to help with the rack assembly.
> 5. [C]laimant then stated that he was in a bad mood and didn't want to talk about it anymore.
> 6. [O]wner told [C]laimant "When you are at work, you need to focus on work."
> 7. [O]wner asked [C]laimant what he was mad about and if [C]laimant was refusing the additional work.
> 8. [C]laimant did not respond but got up and walked out of the meeting, at which time [O]wner asked [C]laimant "Is this it?"
> 9. [C]laimant did not respond and [O]wner asked [C]laimant "Is this your notice?"
> 10. [C]laimant still did not respond and [O]wner told [C]laimant "Well, I'd take this as your notice."
> 11. [G]eneral [M]anager followed [C]laimant back to [C]laimant's work area and asked [C]laimant what he was mad about.
> 12. Rather than discussing his dissatisfactions, [C]laimant told [G]eneral [M]anager "I guess this is it" and [G]eneral [M]anager replied "I would say so."
> 13. [C]laimant quit his employment due to his dissatisfaction with the working conditions.

(FOF ¶¶ 2-13.) Based on these findings, the Board concluded that Claimant did not make a reasonable effort to preserve his employment prior to quitting and, therefore, Claimant did not meet his burden to show that he was not ineligible for benefits under Section 402(b) of the Law. (Board Decision at 3.) The Board did not consider Owner's statement, "I'd take this as your notice" as a firing. (Id.) Of further relevance to the Board's reasoning was that Claimant, when given an opportunity to discuss with General Manager his dissatisfaction with his working conditions, instead responded "I guess this is it." (Id.) Claimant now petitions this Court for review.[6]

The determinative issue in this case is whether Claimant's separation from his employment was voluntary. It is Claimant's burden to establish that his separation was voluntary or involuntary. Watkins v. Unemployment Comp. Bd. of Review, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013). While our review of this question is highly fact intensive, "[w]hether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment." Id. To that end, "[a] finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment." Id. Conversely, "to be interpreted as a discharge, the employer's language must possess the immediacy and finality of a firing." Id. "A voluntary termination is not limited to a formal or even an express resignation; it can be

_____

[6] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

6

inferred from the employee's conduct." Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015).

Based on the facts found by the Board, we agree with the Board that Claimant signaled his conscious intention to leave his employment and that Owner's statement does not contain the immediacy and finality of a firing. (Board Decision at 2.) While Claimant never expressly used the words "I quit," Claimant's decision to walk out of Owner's office without accepting an assignment or responding to Owner's questions regarding notice, combined with Claimant's statement, "I guess this is it," to General Manager when General Manager followed Claimant to his work station, signals Claimant's intent to voluntarily terminate the employment relationship.

Claimant contends that Owner's statement "consider this your notice," accompanied by General Manager's request for keys, shows that he was fired because the statements possess the immediacy and finality of a firing. We disagree. First, Claimant misstates Owner's statements by adding a degree of finality that is not present in the Owner's statements as found by the Board. The Board is the ultimate fact finder. Stugart v. Unemployment Comp. Bd. of Review, 85 A.3d 606, 614 (Pa. Cmwlth. 2014). We review the testimony in the light most favorable to the party that prevailed below, in this case, Employer. Id. According to the Board's findings, after Claimant did not respond to the assignment of a project, Owner asked Claimant on two occasions whether he was giving his notice; first asking "[i]s this it," and then by asking "[i]s this your notice?" (FOF ¶ 9.) After receiving no response to either inquiry, "[O]wner told [C]laimant '[w]ell, I'd take this as your notice.'" (Id. ¶ 10.) Owner understood Claimant's actions as a voluntary quit and Claimant did not object or otherwise respond to Owner's final

7

statement. General Manager followed Claimant back to Claimant's work area to ask what was going on. Instead of discussing with General Manager his concerns and reasons for walking out of Owner's office, Claimant stated "I guess this is it." (Id. ¶ 12.) These findings, which are supported by substantial evidence, adequately reflect the evidence presented and demonstrates that Claimant signaled his conscious intent to leave his employment.

Second, Employer's request for Claimant to turn over his keys does not support Claimant's argument that Employer terminated his employment. The Board made no findings regarding the transfer of Claimant's keys, presumably because the Board understood that the exchange between Claimant and General Manager regarding the keys was not relevant because it occurred *after* Claimant signaled his intention to terminate his employment. General Manager testified that he asked for the keys because "[Claimant] had already stated previous to that that I guess this is it. So I assumed [by] the way [Claimant] said that, [that] [Claimant] was] quitting." (Hr'g Tr. at 7.)

Accordingly, we hold that the Board did not err in concluding that Claimant voluntarily terminated his employment without compelling and necessitous reason, and, therefore, is ineligible for benefits under Section 402(b) of the Law.

_____
**RENÉE COHN JUBELIRER,** Judge

8

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Scott Lewis, : 
            Petitioner : 
           : 
         v. :   No. 1718 C.D. 2016
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

# **O R D E R**

      **NOW**, April 3, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

 

                          _____

                          **RENÉE COHN JUBELIRER,** Judge