IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryna U. Smith,                        :
                    Petitioner         :
                                       :
           v.                          :
                                       :
Unemployment Compensation              :
Board of Review,                       :    No. 522 C.D. 2021
                    Respondent         :    Submitted: March 11, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED:  May 26, 2022


           Bryna U. Smith (Claimant) petitions this Court for review of the
Unemployment Compensation (UC) Board of Review's (UCBR) April 19, 2021
order reversing the Referee's decision and denying Claimant UC benefits under
Section 402(b) of the UC Law (Law).[1]  Claimant presents one issue for this Court's
review: whether the UCBR's findings of fact were supported by substantial
evidence.  After review, this Court affirms.

           UPMC Home Health Care (Employer) hired Claimant as an
occupational therapist on May 29, 2018.  On March 19, 2020, Claimant began an
approved leave of absence to provide care for her mother.  Although Claimant is her
mother's primary care provider, her mother resides with Claimant's father and
brother.  The family decided to have Claimant provide primary care to Claimant's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

mother because of Claimant's education and experience with providing similar care. Claimant did not return to work from her leave of absence when it expired on June 11, 2020. Claimant asked Employer if she could return to work on an as-needed basis, but Employer declined the request. Claimant chose to resign in order to continue providing her mother's primary care.

Claimant applied for UC benefits on June 14, 2020. On October 29, 2020, the Scranton UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(b) of the Law. Claimant appealed, and a Referee held a hearing on December 14, 2020. On December 18, 2020, the Referee reversed the UC Service Center's determination. Employer appealed to the UCBR. On April 19, 2021, the UCBR reversed the Referee's decision and denied Claimant UC benefits under Section 402(b) of the UC Law. Claimant appealed to this Court.[2]

Initially,

> [w]hether an employee has cause of a necessitous and compelling nature to quit employment is a legal conclusion subject to appellate review. In order to show necessitous and compelling cause, the claimant must establish that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) she acted with ordinary common sense; and 4) she made a reasonable effort to preserve her employment.

*Stugart v. Unemployment Comp. Bd. of Rev.*, 85 A.3d 606, 614 (Pa. Cmwlth. 2014) (emphasis omitted) (quoting *Comitalo v. Unemployment Comp. Bd. of Rev.*, 737

---

[2] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

A.2d 342, 344 (Pa. Cmwlth. 1999) (citation and quotation marks omitted; emphasis added)).

Claimant argues that the UCBR erred by reversing the Referee's decision and denying Claimant UC benefits because the UCBR's findings of fact were not supported by substantial evidence.

> The law is well[ ]established:
>
> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. **It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder**; **the critical inquiry is whether there is evidence to support the findings actually made**. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.
>
> *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev*[.], 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (emphasis added; citations omitted).

*HPM Consulting v. Unemployment Comp. Bd. of Rev.*, 185 A.3d 1190, 1194 (Pa. Cmwlth. 2018) (footnote omitted). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

> "In determining whether a finding of fact is supported by substantial evidence, **the Court is required to give the party in whose favor the decision was rendered 'the benefit of all reasonable and logical inferences that may be drawn from the evidence of record**.'" *Allegheny Cnty. Off. of Child., Youth & Fam*[.] *v. Dep't of Hum. Servs.*, 202 A.3d 155, 164 (Pa. Cmwlth. 2019) (quoting *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Off., Child., Youth & Fam. Servs.*, 681 A.2d 853, 856 (Pa.

3

Cmwlth. 1996)).   "Mere speculation or conjecture is insufficient to support a factual finding, but where there exists the ability to draw reasonable and logical inferences from evidence that is presented, including testimony, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion."   *W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

*Hauck v. Unemployment Comp. Bd. of Rev.*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 1351 C.D. 2020, filed Feb. 23, 2022), slip op. at 13 (emphasis added).

Claimant specifically contends that Findings of Fact Nos. 7, 8, and 9 were not supported by substantial evidence.  Finding of Fact No. 7 states: "Claimant chose to resign because she wanted to continue providing primary care to her mother."  Certified Record (C.R.) at 83.

When asked the reason that she left her employment, Claimant testified:

I felt forced to leave my job because I was not being given the [personal protective equipment (]PPE[)] that I needed to protect my family member who is at high risk and who I am a caregiver for whom I was given -- I was awarded [leave pursuant to the Family and Medical Leave Act[3] (]FMLA[)], that **I am a primary caregiver to my mother who needs my assistance 24/7 when I am not working as needed**.  I made that clear to [] Employer that I was very concerned about not being able to be protected in March of 2020, when the pandemic was - when the pandemic surfaced.  And I worked with people in close proximity in their homes which are unsanitized environments, with elderly individuals, and I was being told I understand that the [Center for Disease Control and Prevention (]CDC[)] at that time was . . . [.]

C.R. at 52, Notes of Testimony, Dec. 14, 2020 (N.T.) at 6 (emphasis added).

In addition, Claimant related:

C[laimant's] L[awyer:]  And tell the [Referee] about the care that you give your mother.

---

[3] 29 U.S.C. §§ 2601, 2611-2620, 2631-2636, 2651-2654.

> C[laimant:] **I have a mentally ill and physically ill mother with respiratory conditions whom I have to be available for 24/7 days of the week throughout the rest of my life** because I am the only person that can care for her in the manner in which she needs care for, and that was stated in my FMLA applications. I don't want to say anymore because I feel like I'm not supposed to.

C.R. at 53, N.T. at 7 (emphasis added).

Further, when asked on cross-examination whether it was her choice to care for her mother, Claimant declared:

> No, it is not my choice. There is a -- and I'm sure that [Human Resources] has it. I've been approved [sic] FMLA [leave]. My mother's psychiatrist has, you know, gone -- has stated that **I am the primary caregiver to her health and mental health needs**. **I am the person that has to be there to take care of her physically and emotionally because my father is unable to do it because he is not there to do it**. **I don't have any other help**. She has no other family other than me to do that for her in Pittsburgh, and that has . . .
>
> . . . .
>
> [a]nd my FMLA was approved based upon that.

C.R. at 56, N.T. at 10 (emphasis added).

> Claimant's father, Arthur Smith (Smith), recalled:
>
> E[mployer's] L[awyer:] Thank you. So, [] Smith, did you, your [sic] – and your son and daughter, did you all agree that your daughter will be the caregiver for your wife?
>
> . . . .
>
> E[mployer's] L[awyer:] Were you -- did you all make the decision together?
>
> [Smith:] Yes. My daughter had the background and the necessity to do what a daughter would do for her family, and she was best qualified.

C.R. at 59-60, N.T. at 13-14.

Because the above-quoted testimony is "relevant evidence upon which a reasonable mind could base [the] conclusion[,]" *Sipps*, 181 A.3d at 484 (quoting *Sanders*, 739 A.2d at 618), that "Claimant chose to resign because she wanted to continue providing primary care to her mother[,]" substantial evidence supported Finding of Fact No. 7. C.R. at 83.

Finding of Fact No. 8 reflects: "[E]mployer provides proper [PPE] to its staff members, which includes a surgical mask." C.R. at 84. Finding of Fact No. 9 further states: "If the staff member is near a person who is positive for COVID-19 or had possible exposure to a positive person, the staff member is provided additional PPE, consisting of an N95 mask, gown, gloves, and eye protection of either a face shield or goggles." *Id*.

Claimant's supervisor, Alicia Demchak (Demchak), testified:

E[mployer's] L[awyer:] What type of PPE did the Claimant (sic) offer to [] Claimant in her position?

[Demchak:] So, at [Employer], we have a whole system-wide team that coordinates their [sic] efforts with our Wolff Center along with CDC guidelines to come up with our PPE recommendation. So, every day, when treating patients who were not known exposures or COVID-positive, all staff members were provided a surgical mask to wear which was according to guidelines. If patients were COVID-positive or had a known exposure, they will be provided additional PPE, which included a N95 mask, gown, gloves and eye protection, which would be goggles or [a] face shield.

E[mployer's] L[awyer:] Do you know if, in [] Claimant's case, all the PPE was offered when necessary?

[Demchak:] Yes, it was.

C.R. at 61, N.T. at 15.

Because the above-quoted testimony is "relevant evidence upon which a reasonable mind could base [the] conclusion[,]" *Sipps*, 181 A.3d at 484 (quoting

*Sanders*, 739 A.2d at 618), that "[E]mployer provides proper [PPE] to its staff members, which includes a surgical mask[,]" and "[i]f the staff member is near a person who is positive for COVID-19 or had possible exposure to a positive person, the staff member is provided additional PPE, consisting of an N95 mask, gown, gloves, and eye protection of either a face shield or goggles[,]" substantial evidence supported Findings of Fact Nos. 8 and 9. C.R. at 84.

Claimant also asserts that the UCBR's conclusion that Claimant failed to prove that she sought every reasonable alternative to preserve her employment was not supported by substantial evidence.

The UCBR determined that Claimant was disqualified from receiving UC benefits under Section 402(b) of the Law, reasoning:

> [C]laimant asserts that she left work because [] [E]mployer did not provide adequate PPE and because she was the primary care provider for her mother. The [UCBR] addresses both asserted reasons for her departure.
>
> . . . .
>
> First, the [UCBR] does not credit [] [C]laimant that inadequate PPE was a motivating factor to leave her employment. Second, [] [C]laimant acknowledged that she sought to return in a "causal [sic] position" presumably on an as-needed basis.[4] Given her willingness to return in at least a limited capacity, it is unlikely that PPE was truly a motivating factor in her failure to return to work. Moreover, it is evident that [] [C]laimant had a continued need to care for her mother. Therefore, the [UCBR] addresses this reason as the basis for her separation.
>
> [] [C]laimant testified that she provided for her mother's health and mental care. [] [C]laimant offered limited information as to the nature of her mother's medical needs. Further, [] [C]laimant acknowledged that her mother resides with both her father and brother. [] [C]laimant

---

[4] When asked: "[D]id you ask your Employer, the current Employer, to go on part-time?" Claimant responded: "I did, and casual." C.R. at 54, N.T. at 8.

7

offered limited information as to why these individuals could not provide care to her mother,[5] or why some external care would be impossible, inadequate, or otherwise unsuitable for her mother. [] [C]laimant testified that it was a personal and family choice that she would provide care for her mother because of her education and experience.

In considering the totality of the evidence presented, the [UCBR] concludes that [] [C]laimant has not satisfied her burden. While [] [C]laimant and her family may have preferred to have [] [C]laimant provide primary care to [] [C]laimant's mother, [] [C]laimant failed to prove that she sought every reasonable alternative to preserve her employment.[6] Therefore, [] [C]laimant has not shown that she voluntarily left work for cause of a necessitous and compelling nature.

C.R. at 85.

Giving Employer "the benefit of all reasonable and logical inferences that may be drawn from the evidence of record," as we must, this Court holds that substantial evidence supported the UCBR's findings and conclusions. *Hauck*, ___ A.3d at ___, slip op. at 13 (quoting *Allegheny Cnty.*, 202 A.3d at 164). Accordingly, because Claimant quit her job without a necessitous and compelling reason, the UCBR properly concluded Claimant was ineligible for benefits under Section 402(b) of the Law.

Moreover,

[t]he purpose of UC is to protect against "the hazards of unemployment" by providing "compensation for loss of wages by employes during periods when they become

---

[5] When asked: "[I]is there a reason why your brother and your father were not qualified to take care of your mother as the primary caregiver?" Claimant responded: "Yes. They both work demanding hours." C.R. at 58, N.T. at 12.

[6] This Court acknowledges that Claimant is required to prove that "she **made a reasonable effort** to preserve her employment." *Stugart*, 85 A.3d at 614 (quoting *Comitalo*, 737 A.2d at 344 (citation and quotation marks omitted; emphasis added)). Based on its review of the evidence, this Court concludes that Claimant did not do so.

8

unemployed through **no fault of their own**." [Section 4 of the Law,] 43 P.S. § 752 (emphasis added). Further, Section 402(b) of the Law provides, in relevant part, that a claimant shall be ineligible for benefits for any week "[i]n which h[er] unemployment is due to **voluntarily leaving work** without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b) (emphasis added). In this case, the UCBR found in Employer's favor. The record evidence supports the UCBR's findings.

*Small v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1109 C.D. 2012, filed Jan. 9, 2013), slip op. at 3-4.[7]

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Bryna U. Smith,                   :

          Petitioner        :

                        :

     v.                   :

                        :

Unemployment Compensation  :

Board of Review,          :   No. 522 C.D. 2021

          Respondent   :

<u>O R D E R</u>

AND NOW, this 26th day of May, 2022, the Unemployment Compensation Board of Review's April 19, 2021 order is affirmed.

_____

ANNE E. COVEY, Judge