# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leslie Dubich,                    :
               Petitioner            :
                                       :
        v.                           :
                                       :
Department of Military and        :
Veterans Affairs (State Civil         :
Service Commission),             :    No. 1144 C.D. 2021
               Respondent        :    Submitted: September 9, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                   FILED: January 19, 2023

         Leslie Dubich (Dubich), pro se, petitions this Court for review of the State Civil Service Commission's (SCSC) September 23, 2021 order dismissing Dubich's appeal and sustaining the Department of Military and Veterans Affairs' (Appointing Authority) removal of Dubich from her regular employment as a licensed practical nurse (L.P.N.). Essentially, Dubich presents three issues for this Court's review: (1) whether the Appointing Authority and the SCSC violated Dubich's due process rights; (2) whether substantial evidence supports the SCSC's determination that Dubich violated the Appointing Authority's Standards of Conduct and Work Rules (Work Rules), including the Workplace Violence and Bullying (Workplace Violence) Prevention Policy (Workplace Violence Policy), and the Southwestern Veterans Center's (SWVC) Nursing Policies and Procedures (Nursing Procedures); and (3) whether the Appointing Authority's employment

termination based, *inter alia*, on Dubich's social media post, was consistent with the Appointing Authority's Work Rules, and whether such Appointing Authority action violated Dubich's rights under the First Amendment to the United States (U.S.) Constitution, U.S. Const. amend. I.[1]  After review, this Court affirms.

---

[1] Dubich identified the following issues in her Statement of Questions Involved:

> I. Were my [c]onstitutional [r]ights violated by the Appointing Authority . . . and/or by [the] SCSC's Decision/Opinion?
>
> . . . .
>
> II. Were the Appointing Authority's findings of fact limited to the question of whether the [SCSC's] findings were adequately supported by the evidence as a whole?
>
> . . . .
>
> III. Were the findings of the Appointing Authority and/or the SCSC [] arbitrary or capricious?
>
> . . . .
>
> IV. Did I violate [the] Work Rules and the [Appointing Authority's] Workplace Violence [] Policy by stating on May 17, 2019[,] that I had a gun in my purse, which standing alone would result in termination?
>
> . . . .
>
> V. Did I neglect my duties on numerous occasions by failing to communicate with staff as necessary and refusing to do medication counts as required?
>
> . . . .
>
> VI. Did I post on social media a response with explicit remarks without merit that referenced [SWVC] and its employees that affect the credibility of the Commonwealth, the [Appointing Authority] and SWVC?
>
> . . . .
>
> VII. Did [the] SCSC make their [sic] adjudication decision on verifiable facts in the record and written witness statements and testimony?

Dubich Br. at 2-3.  Because these issues are subsumed in this Court's rephrasing of the issues, they will be addressed accordingly.

2

The Appointing Authority employed Dubich as an L.P.N. at the SWVC, where she worked the evening shift. On September 27, 2017, Dubich signed, acknowledged, and agreed to abide by the Appointing Authority's Work Rules. *See* Supplemental Reproduced Record (S.R.R.) at 369b-375b. The Work Rules prohibit employees from neglecting their duties or responsibilities by, *inter alia*, failing to perform assigned tasks or legitimate work assignments. *See* S.R.R. at 200b, 369b. The Work Rules also forbid an employee from failing "to adhere to policies related to medication/treatment administration, notification, and documentation[.]" S.R.R. at 370b. In addition, the Work Rules prohibit "[a]ny action which violates the Commonwealth or [Appointing Authority] Workplace Violence [Policy] during working hours, or while on any [Appointing Authority] property, including but not limited to: inflicting bodily harm, [and] threatening, intimidating, coercing, or interfering with fellow employees, supervisors, residents, or the general public." S.R.R. at 373b. The Work Rules further ban "[t]hreatening, intimidating, interfering with, or using abusive or profane language including ethnic slurs," and "inappropriate conduct or behavior towards fellow employees, supervisors, residents or the general public, during working hours or while on any [Appointing Authority] property." S.R.R. at 373b. The Work Rules also proscribe "[a]ny action which would reflect unfavorably on or discredit the Commonwealth or [Appointing Authority], including but not limited to: public posts on social media, news outlets, or websites." *See* S.R.R. at 373b. The Work Rules declare that "[v]iolations of these rules may . . . result in appropriate disciplinary actions up to and including termination." S.R.R. at 369b.

On May 17, 2019, while entering the SWVC facility, L.P.N. Rita Thomas (Thomas) asked Dubich about the weight of her purse, to which Dubich responded that there was a gun in it. On May 17, 2019, at 3:20 p.m., Registered Nurse (R.N.) Sherry Walters (Walters) called Director of Nursing Ronna Stewart

(Stewart) and informed her about Dubich's claim that she was carrying a gun. Stewart informed Assistant Director of Nursing Shannon Phillips (Phillips) about Dubich's statement, and instructed Phillips and security to approach Dubich to investigate whether her representation was true.[2] Stewart then proceeded to Human Resource (H.R.) Analyst 2 Jamie Cuthbert's (Cuthbert) office, where she reported Dubich's purported gun possession to Cuthbert and Commandant Richard Adams (Adams).

While Stewart was consulting with Cuthbert and Adams, Phillips and the security guard approached Dubich and asked her to talk to them in private. Dubich immediately became defensive. Phillips reiterated that she needed to talk with Dubich in private. Phillips, the security guard and Dubich went into the laundry room, where Phillips said to Dubich: "[P]lease tell me this is not true. Did you say you have a gun in your purse?" S.R.R. at 126b. Dubich responded: "This is ridiculous," and offered to let Phillips and the security guard search her purse. *Id*. The security guard searched Dubich's purse and found no gun. Phillips explained to Dubich that as an employee, she cannot make statements about having a gun inside her purse, especially given the Tree of Life Synagogue shooting and because they are in a public building. Dubich responded that she was joking when Thomas asked her why her purse was so heavy. Dubich admitted to Phillips that she said to Thomas: "Yeah. That's because I got [sic] my Glock in there." S.R.R. at 127b.

While Dubich spoke with Phillips, Dubich accused Clerk 2 Timothy Oleniacz (Oleniacz) of reporting her to management. Oleniacz was nearby when Dubich made the gun statement, but he did not hear what she said. Dubich's false accusation about Oleniacz spread through the building, creating what Oleniacz

---

[2] Phillips was concerned by Dubich's statement both because of a recent shooting at Tree of Life Synagogue, and because she previously overheard Dubich speaking to R.N. Kimberly Watson (Watson) about a fight Dubich had with another woman. Dubich had told Watson that she threw the woman down a set of stairs.

4

claimed was a hostile work environment for him. Although Oleniacz did not hear what was said, R.N. Kimberly Watson (Watson) was present for the conversation and observed Thomas lifting Dubich's purse and characterizing it as heavy. Watson overheard Dubich respond that her purse was heavy due to her gun, and noted such in a witness statement.[3]

On May 21, 2019, Cuthbert conducted Dubich's first due process conference (DPC). On May 30, 2019, the Appointing Authority suspended Dubich pending investigation based on allegations of violating the Workplace Violence Policy arising from her statement that she was carrying a gun.

During Dubich's Workplace Violence investigation, Stewart received a report that Dubich failed to perform a medication count at the day shift and evening shift exchange with the out-going nurse. Pursuant to the SWVC Narcotic Reconciliation Record, during the shift change at 6:00 a.m., 2:00 p.m., and 10:00 p.m., "the oncoming medication nurse and the out-going medication nurse, jointly count and certify the correct amount of each [c]ontrolled drug." S.R.R. at 381b. Both medication nurses are required to document and certify on the Narcotic-Sedative Record that the count was correct. Any discrepancies are to be documented and reported to the Nurse Supervisor. The Work Rules characterize an employee's "[f]ailure to perform assigned tasks or a legitimate work assignment[,]" and an employee's "dishonesty, including the falsification of reports and records," as a neglect of his or her duties or responsibilities. S.R.R. at 369b. During shift changes, L.P.N. Jeanette Myers (Myers) observed Dubich refusing to complete her assigned

---

[3] Initially, when Stewart and Cuthbert asked Watson to write a witness statement, she declined because she was conducting a narcotic medication count. Watson explained that she eventually wrote a witness statement after the Appointing Authority "threatened [her with] discipline if [she] didn't give a statement." S.R.R. at 234b. However, Watson later claimed that she erred in the witness statement - she never said Dubich had a gun on her person. *See* S.R.R. at 237b.

5

medication counts. As a result, Watson completed Dubich's medication counts for Dubich during the shift change while Dubich left the unit. Watson admitted that when Dubich refused to complete her assigned medication counts, Watson completed them on Dubich's behalf. Myers also observed Dubich consistently ignore and not communicate with her coworkers during shift changes. Oleniacz described that Dubich's failure to communicate with staff members between shifts made the work environment toxic.

On June 3, 2019, shortly after Dubich's suspension began, Phillips forwarded an email to Stewart from Sean Lukachyk (Lukachyk)[4] with an attached Facebook response Dubich gave to Andy Knapp's (Knapp)[5] June 1, 2019 Facebook post that stated: "SWVC just cut loose one of, if not the most knowledgeable L.P.N.'s [sic] I have ever had the pleasure of working with!!! That's their loss. Take your talents elsewhere. You are better than that place!!!" S.R.R. at 455b. Dubich responded thereto, in relevant part:

> That's a cesspool of toxicity! They want a bunch of sheep working there who will bow [at] their every whim. Want me [to] cover-up their gross negligence. They're gonna [sic] kill [someone] . . . oh w[ait] . . . they already have more than once with their incompetence.
>
> . . . .
>
> Yeah . . . [. . T]hey would rather have nurses who cover sh[*]t up, double dose patients, [and] make errors literally every single day than people who actually care about the residents. Because the [Director of Nursing] doesn't want the bad light shining on her princess a[**] after she walked [i]n after the lovely episode of leaving a [patient] on a bedpan [for] [three] days. Her [and] H[.]R[.] [sic] going around asking certain people [to] write statements against me because she told the charge nurse she wants me fired

---

[4] Lukachyk's position was not identified in the SCSC's Decision; however, Dubich indicates that Lukachyk is an R.N. working at the SWVC.

[5] Knapp is identified as a friend of some of the SWVC employees.

because my documentation is a legal issue. Meanwhile [you are] supposed [to] practice defensive charting. I've never had a job [sic] defensive charting. I've never had a job EVER criticize my charting. In fact they've all praised it [and] it's [sic] saved the a[**]es of many [i]n the past. And it's [sic] save[d] my a[**] [three] times when being a witness [i]n depositions.

S.R.R. at 455b-456b.

On June 14, 2019, the Appointing Authority notified Dubich that based on the conducted interviews, witness statements, and evidence collected, the investigation substantiated the Workplace Violence allegations against Dubich . On June 17, 2019, H.R. Analyst 3 Bryan Bender (Bender) conducted Dubich's second DPC. Thereafter, Cuthbert's disciplinary packet was compiled with witness statements, DPC notes, Dubich's prior disciplinary actions, and correspondence, and sent to Bender in the Appointing Authority's Labor Relations Department. After reviewing the disciplinary packet, Bender recommended Dubich's removal and drafted Dubich's employment termination letter.

By July 17, 2019 letter, the Appointing Authority notified Dubich of her discharge, effective July 17, 2019, as follows:

> The reason for your termination is your violation of the [Appointing Authority's] . . . Work Rules, the [Appointing Authority's] Workplace Violence . . . Policy [(Workplace Violence charge)], and the [SWVC's] Nursing Policies and Procedures. Specifically, on May 17, 2019, you made a comment in the workplace that you have a gun in your purse. Additionally, on numerous occasions, you neglected your duty [(Neglect of Duty charges)] when you failed to communicate with staff as necessary [(Failure to Communicate charge)] and refused to do medication counts as required. You had a charge nurse count and take ownership of the medication cart during shift change and would then take control of it from her after the other shift had left [(Refusal to Perform Medication Counts charge)].
>
> Furthermore, on or about June 1, 2019, you made a post on social media that referenced [the SWVC] and its

7

employees making remarks that affect the credibility of the Commonwealth, the [Appointing Authority] and [the] SWVC. Your comments were explicit and without merit, referencing that SWVC kills people and specifically calling out the Director of Nursing. This post was made on a public forum.

Your violation of the [Appointing Authority] Workplace Violence . . . Policy standing alone would result in your termination.

S.R.R. at 393b.

On August 4, 2019, Dubich appealed from the Appointing Authority's removal decision to the SCSC and asserted discrimination claims alleging retaliation, disparate treatment, and a violation of her right to freedom of speech. Therein, she contended that her employment termination was in retaliation for her reporting misconduct by other nurses, that she was treated differently than other employees and that the Appointing Authority improperly terminated her employment for exercising her free speech rights. The SCSC held a hearing on February 24, 2020, at which the Appointing Authority presented testimony from Cuthbert, Myers, Phillips, Oleniacz, Stewart, Bender, R.N. Supervisor Immanuel Divakar (Divakar), and Adams. Divakar, Watson, Dubich, Stewart, and Cuthbert testified on Dubich's behalf. On September 23, 2021, the SCSC issued its adjudication and order, finding that the Appointing Authority had just cause for Dubich's removal, and that Dubich presented no credible evidence to support her discrimination claim. Notably, the SCSC explained that "[Dubich's] charge of violating the [A]ppointing [A]uthority's Workplace Violence [Policy] standing alone would warrant her removal." S.R.R. at 553b. Dubich appealed to this Court.[6]

---

[6] "Our scope of review is limited to a determination of whether the [SCSC] committed an error of law, whether there has been a violation of constitutional rights, or whether there is substantial evidence to support the findings of fact necessary to support the adjudication." *Norvell v. State Civ. Serv. Comm'n*, 11 A.3d 1058, 1061-62 (Pa. Cmwlth. 2011).

8

Dubich first argues that the Appointing Authority violated her due process rights by denying her the right to see the details and specifics of the charges against her. Further, she claims the SCSC erred by relying on hearsay evidence in sustaining her removal.

Initially, the U.S. Supreme Court has declared:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why [a] proposed action should not be taken is a fundamental due process requirement. **The tenured public employee is entitled to oral or written notice of the charges against h[er], an explanation of the employer's evidence, and an opportunity to present h[er] side of the story**. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis added; citations omitted).

Here, the Appointing Authority conducted an investigation and two DPCs at which Dubich was provided "notice of the charges against [her], an explanation of the [Appointing Authority's] evidence, and an opportunity to present [her] side of the story."[7] *Id*. Accordingly, the Appointing Authority satisfied the "essential requirements of due process[.]" *Id*.

Dubich also asserts that the SCSC's decision was not based on substantial evidence, and that the SCSC improperly based its decision on hearsay evidence. Specifically, Dubich claims:

> There was absolutely no evidence presented or included to sustain the charges against me at the two DPC[]s or at any other time. [The] SCSC accepted the Appointing Authority's charges as valid by applying hearsay as facts in their [sic] incorrect ruling that the Appointing Authority

---

[7] *See* S.R.R. at 401b-425b.

9

provided sufficient evidence to prove the charges against me.

Dubich Br. at 11. Dubich further asserted:

> The Appointing Authority did not investigate as required by the Commonwealth Disciplinary Rules to find substantial facts to prove I did what I was charged with [sic]. The[] [Appointing Authority] did not produce any findings of fact with supported admissible evidence or proof. The[] [Appointing Authority's] whole case against me was based on assumptions, beliefs and hearsay statements that were not verified for truth.

*Id*.

> With respect to the Workplace Violence charge, the SCSC determined:

> Upon careful review of the record, the [SCSC] finds the [A]ppointing [A]uthority has presented sufficient evidence to support the charge of [Dubich] stating she had a gun in her purse on May 17, 2019. We find Cuthbert, Phillips, Stewart, and Bender credible that [Dubich's] gun statement was unauthorized behavior for [an L.P.N.] because the threatening and intimidating statement interfered with her fellow employees and supervisors in violation of the [A]ppointing [A]uthority's Work Rules, and Workplace Violence . . . Polic[y]. While Phillips and Stewart confirmed [Dubich] did not possess a gun inside her purse, we are not persuaded [sic] the lack of the presence of a gun lessens the impact of [Dubich's] comment. It is unacceptable that [Dubich] considered her gun statement as a joke in the workplace.

S.R.R. at 561b (footnote omitted).

> This Court has explained:

> [U]nder [Pennsylvania Rule of Evidence] 803(25), a party's out-of-court admission is an exception to the hearsay exclusion. This Court has long held "that words of a party constitute an admission and therefore may always be used against [her]." *Evans v. Unemployment Comp. Bd. of Rev*[.], . . . 484 A.2d 822, 827 ([Pa. Cmwlth.] 1984). This exception is based upon the fact that, unlike

10

hearsay, a party's admission is personal first-hand knowledge, and it may support a . . . finding of fact.

*Stugart v. Unemployment Comp. Bd. of Rev.*, 85 A.3d 606, 608 (Pa. Cmwlth. 2014).

The Appointing Authority investigated Dubich's charged conduct, collected employee statements, and provided two DPCs at which Dubich participated. With respect to the Workplace Violence charge resulting from Dubich's gun statement, Thomas, the person to whom Dubich's statement was directed, did not appear at the SCSC hearing. No other witnesses testified that they heard first-hand Dubich make the statement. Nonetheless, Phillips testified that she spoke with Dubich directly after the incident, when security searched Dubich's purse and Dubich admitted saying that she had a gun in her purse. Phillips stated:

> And I was trying to explain to [Dubich] you can't --- **she told me that it was a joke**. **She had said that as a joke because** [**Thomas**] **had asked her why her purse was so heavy**, **and she said**, **yeah**, **that's because I got my Glock in there**. I said you can't say something like that, especially not in a public building, especially when we just had the Tree of Life [Synagogue shooting] happen not that long ago. And she said this is not the Tree of Life [Synagogue].

S.R.R. at 126b-127b (emphasis added). In addition, Cuthbert testified before the SCSC that Dubich admitted at the first DPC to making the gun comment, but insisted it was made in a joking manner. *See* S.R.R. at 73b. Further, Bender testified that Dubich claimed in the second DPC that she made the statement in a joking manner. *See* S.R.R. at 197b. Because witnesses testified that Dubich confirmed making the statement, her out-of-court statements are party admissions permissible for the SCSC's consideration.[8]

> It is well settled that the [SCSC] has the inherent power to determine the credibility of witnesses and the value of

---

[8] Bender also testified that Dubich's conduct violated the Work Rules because she referenced a gun at the workplace. *See* S.R.R. at 197b-198b.

11

their testimony. . . .  In making its findings, the [SCSC] must base the findings upon substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.

*McAndrew v. State Civ. Serv. Comm'n (Dep't of Cmty. & Econ. Dev.)*, 736 A.2d 26, 31 (Pa. Cmwlth. 1999) (citation omitted).  Thus, the SCSC was free to evaluate the witnesses' credibility and determine the weight to give their testimony.  Having found Phillips, Cuthbert, and Bender credible, *see* S.R.R. at 561b, their testimony constitutes substantial competent evidence supporting the Workplace Violence charge.[9]  Accordingly, the Appointing Authority did not violate Dubich's due process rights, and the SCSC did not rely on hearsay evidence in sustaining her dismissal with respect to the Workplace Violence charge.

---

[9] Dubich also contends that the Appointing Authority violated her due process rights by prohibiting her from "seeing any details and specifics of the charges brought against [her] in violation of . . . Commonwealth Management Directive [(]M.D.[)] 590.1 [(relating to discipline)]." Dubich Br. at 10-11.  Dubich does not identify the specific section of M.D. 590.1 to which she refers.  However, M.D. 590.1(5)(j) states, in relevant part:

> **(1)** Prior to determining whether and to what extent an employee will be disciplined, an agency will:
>
> **(a)** notify the employee of the basis, i.e., allegations upon which discipline is being considered; and
>
> **(b)** provide the employee with an opportunity to meet with an agency representative regarding those charges.  At that meeting, the employee will be provided an explanation of the evidence upon which the charges are based and will be given an opportunity to rebut the charges and/or provide information regarding any mitigating or extenuating circumstances the employee believes relevant.  This meeting is termed an "investigatory interview", "fact-finding meeting", or (by some agencies) a "pre-disciplinary conference."

*Id*. (underline emphasis added); https://www.oa.pa.gov/Policies/md/Documents/590_1.pdf (last visited Jan. 18, 2023).  At the DPCs, the Appointing Authority described the charges and allegations against Dubich and afforded her the opportunity to address them.  *See* S.R.R. at 401b-425b.  Thus, Dubich's contention is meritless.

12

In the Appointing Authority's Neglect of Duties charges, it alleged that Dubich failed to communicate with staff and that Dubich refused to perform medication counts. With respect to the Failure to Communicate charge, the SCSC relied on Myers' testimony: "[] Dubich would not speak to us." S.R.R. at 103b. Myers was asked: "[D]id she not talk to you?" *Id*. Myers responded: "No." *Id*. Myers expounded: "Only if she had to. But for the most part[,] she'd ignore me." *Id*. Myers testified that she observed Dubich also ignore other employees, including Walters and Oleniacz. *See* S.R.R. at 103b-104b. She described Dubich as appearing angry. *See* S.R.R. at 104b.

Oleniacz characterized the work environment as toxic, due to a dispute between Dubich and Walters. *See* S.R.R. at 144b, 151b. Oleniacz further claimed that Dubich had falsely reported that he had improperly destroyed a fax, and spread a rumor that he had reported her statement regarding the gun to the Appointing Authority Administration. *See* S.R.R. at 144b. Similarly, Stewart characterized the environment as "very strained," and "very tense, at times hostile" when Dubich was working, due to the staff's failure to communicate as a team. S.R.R. at 159b.

Phillips, Dubich's supervisor, also testified that she observed Dubich's personality conflicts and lack of communication with fellow employees. *See* S.R.R. at 120b-121b. Phillips further described that following a disagreement, Dubich refused to talk to her for several months. *See* S.R.R. at 122b. She stated that when Dubich would communicate with her, Dubich's tone would be hostile and defensive. *See id*. Accordingly, it became difficult for Phillips to get information from Dubich. *See id*.

Regarding the alleged Refusal to Perform Medication Counts charge, the SCSC relied on Stewart's, Watson's, and Bender's testimony.[10] Stewart testified

---

[10] Myers also testified that "[a]t times[, Dubich] wouldn't count the med carts with us, the narcotics." S.R.R. at 103b.

that she had received a report from Walters that Dubich failed to count medication at a shift change as required. *See* S.R.R. at 163b. Stewart recalled that, in a DPC for Watson, Watson admitted that she had performed the medication count for Dubich to "keep the peace." S.R.R. at 164b. Watson acknowledged in her testimony to the SCSC that she had taken over the medication cart and that if Dubich made an error, Watson would ultimately be accountable. *See* S.R.R. at 254b. Bender testified that Dubich's failure to perform required medication counts constituted Dubich's failure to perform her duties. *See* S.R.R. at 200b-201b. The SCSC found the testimony of the Appointing Authority's witnesses credible.

The SCSC, as fact-finder, was empowered to determine the aforementioned witnesses' credibility and the weight to give their testimony. The testimony supports the conclusion that Dubich neglected her duties by failing to communicate with staff and refusing to perform medication counts and, thus, constitutes substantial evidence supporting the SCSC's decision.[11]

For all of the above reasons, the SCSC's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[11] Dubich also contends that the Appointing Authority violated her First Amendment rights by terminating her employment based, in part, on her posted response to a friend's Facebook post. However, because the SCSC concluded that "[Dubich's] charge of violating the [A]ppointing [A]uthority's Workplace Violence [Policy,] standing alone[,] would warrant her removal," S.R.R. at 553b, and this Court has concluded that the SCSC properly sustained that charge, this Court does not reach Dubich's First Amendment argument. *See Procito v. Unemployment Comp. Bd. of Rev.*, 945 A.2d 261, 266 (Pa. Cmwlth. 2008) ("[W]hen faced with a case raising constitutional and non-constitutional grounds, a court must decide the matter on non-constitutional grounds and avoid constitutional questions if possible.").

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leslie Dubich,                                          :
                    Petitioner                          :
                                                        :
          v.                                            :
                                                        :
Department of Military and                              :
Veterans Affairs (State Civil                           :
Service Commission),                                    :        No. 1144 C.D. 2021
                    Respondent                          :

## O R D E R

AND NOW, this 19th day of January, 2023, the State Civil Service Commission's September 23, 2021 order is affirmed.


                                   _____
                                   ANNE E. COVEY, Judge